ORIGINAL

BOSKO PETRICEVIC        8443
P.O. Box 38
Honolulu, Hawaii 96810
Telephone:  (402) 301-3716

E-mail:       boskopetricevic@hotmail.com

Pro-Se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 2 2 2020

at 2 o'clock and 30 min. P M
CLERK, U.S. DISTRICT COURT
25
PAID

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| BOSKO PETRICEVIC, | CIVIL NO. |
|---|---|
| Plaintiffs, | C V20 00283 DKW WRP |
| vs. | COMPLAINT; SUMMONS |
| PATRICK SHIN; RICHARD WILSON; JOHN DWYER; TERRY REVERE; NAN INC., a domestic profit corporation, | |
| Defendants. | |

## COMPLAINT

Plaintiff BOSKO PETRICEVIC ("Plaintiff"), Pro-Se, hereby brings his

Complaint against Defendants PATRICK SHIN, RICHARD WILSON, JOHN DWYER,

TERRY REVERE and NAN, Inc. ("Defendants") and alleges and states as follows:

## PARTIES

1.      At all times relevant herein, Plaintiff Bosko Petricevic ("Plaintiff") is a

resident of Honolulu, Hawaii. Further, Bosko Petricevic is a State of Hawaii licensed

attorney employed the by the Hawaii law firm.

Fed

2.     At all times relevant herein, Defendant PATRICK SHIN ("Defendant Shin") is a resident of the City and County of Honolulu, State of Hawaii, and owner of Nan, Inc. - Hawaii construction company, who still lives in Honolulu, Hawaii.

3.     At all times relevant herein, Defendant Richard Wilson ("Defendant Wilson") is a State of Hawaii licensed attorney and a resident of Honolulu, Hawaii who still lives in Honolulu, Hawaii.

4.     At all times relevant herein, Defendant Jack Dwyer ("Defendant Dwyer") is a State of Hawaii licensed attorney and a resident of Honolulu, Hawaii who still lives in Honolulu, Hawaii.

5.     At all times relevant herein, Defendant Terry Revere ("Defendant Revere") is a State of Hawaii licensed attorney and a resident of Honolulu, Hawaii who still lives in Honolulu, Hawaii.

6.     At all times relevant herein, Defendant NAN, Inc. ("NAN") is an employer within the meaning of Title VII. NAN's principal place of business is in Honolulu, Hawai'i.

7.     Upon information and belief, and at all times relevant herein, NAN's employees, agents and/or representatives, were acting within the course and scope of their duties as employees, agents and/or representatives of NAN; therefore, NAN is liable for the intentional and/or tortious and/or wrongful conduct of said employees, agents and/or representatives pursuant to the doctrine of Respondeat Superior and/or principles of Agency.

8.      All events done by all of the above-named Defendants described herein occurred within the City and County of Honolulu, State of Hawaii, and within the jurisdiction and venue of United States District Court for the District of Hawaii.

## NATURE OF THE CASE

9.      The basis of this case are violations and conspiracy to interfere and violate Plaintiff's civil rights by all of the Defendants under 42 U.S.C. § 1985(2) as it relates to Plaintiff's enforcement of his legal rights resulting from wrongful termination from his employment at NAN for being a whistleblower and for complaining about the discrimination he experienced at NAN. It also involves violation of Title VII (42 U.S.C. § 2000e, et seq.) by NAN against Plaintiff.

## JURISDICTION AND VENUE

10.     Subject matter jurisdiction is proper under 28 U.S.C. § 1331 since it involves federal question. All of the Plaintiff's claims arise under **federal** law, specifically 42 U.S.C. § 1985(2) and Title VII (42 U.S.C. § 2000e, et seq.), including the U.S. Constitution.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c), since all of the events or omissions giving rise to the claims occurred in this district.

12.     Personal jurisdiction is proper in this Court because all of the above-named Defendants have minimum contacts with the State of Hawaii because all of the

Defendants live and do business in State of Hawaii and as such have direct contact with the State of Hawaii. All of the Defendants and Plaintiff are residents of Hawaii.

13.     Lastly, Plaintiff has exhausted his administrative remedies in EEOC No. 486-2019-00542 when EEOC and HCRC have granted Plaintiff to pursue a court action.

## FACTUAL BACKGROUND

14.     Plaintiff is a forty (40) year old Serbian man who speaks with a heavy accent when speaking in English.

15.     Plaintiff is a licensed attorney who has been practicing in the area of employment law and other general civil litigation for many years.

16.     Plaintiff was hired by NAN on March 18, 2019 as an In-House Litigation Counsel.

17.     During his three (3) months employment with NAN, Plaintiff repeatedly complained of, reported and refused to participate in illegal activities at NAN committed by NAN and its owner Defendant Shin.

18.     Plaintiff also complained of blatant and ongoing discrimination he experienced during his employment at NAN because of his ethnicity and national origin.

19.     These reports of illegal activities at NAN and Plaintiff's refusal to engage in illegal activities were reported to NAN's owner and upper managers.

20.     NAN's discrimination towards Plaintiff was also reported to NAN's owner and upper managers.

21.     On or about April 10, 2019, Nick Flores (Vice President of NAN)

physically attacked Plaintiff and grabbed Plaintiff's hand in front of Defendant Shin

(Owner of NAN), Wyeth Matsubara (Vice President of NAN) and Trevor Tamashiro

(another NAN In-House counsel). They all witnessed this.

22.     Mr. Flores attacked Plaintiff because he didn't like a legal opinion

Plaintiff was giving to NAN in warning Defendant Shin not to engage in blackmail.

23.     Plaintiff warned Defendant Shin not to engage in a blackmail

scheme against Thomson Metal Fabrics (TMF) for the sole purpose of obtaining leverage

in civil litigation against TMF.

24.     Defendant Shin and Mr. Flores came up with a scheme to try to

blackmail TMF and threaten to report TMF to the federal authorities unless TMF was

willing to pay monetary damages to NAN.

25.     When Plaintiff explained the highly illegal nature of such a scheme,

Mr. Flores physically grabbed Plaintiff and told him to shut up.

26.     When Plaintiff complained of the physical attack by Mr. Flores to

Defendant Shin, as owner of the company, who witnessed this physical act (other witness

were Mr. Matsubara and other in-house counsel, Trever Tamashiro) Defendant Shin

doubled down and engaged in further hostile and discriminatory behavior that included

making insults about Plaintiff 's national origin.

27.     Defendant Shin told Plaintiff that he is "too sensitive" and "worse

than the Americans" meaning "Serbians" are sensitive and weak.

28.     Nothing was done to either rectify this physical assault, reprimand

Mr. Flores or offer any sort of apology for the physical assault that Plaintiff just suffered at the hands of one of the executives of the company.

29.     Things only got worse from there.

30.     This incident happened in Mr. Matsubara's office.

31.     Plaintiff had to physically free himself from Mr. Flores.

32.      Plaintiff immediately complained to Defendant Shin and Mr. Matsubara that this physical attack and subsequent discriminatory comments were beyond inappropriate.

33.     Defendant Shin told Plaintiff that he was weaker, more sensitive and worse than Americans and that Plaintiff should shut up and get over it.

34.     Later that day, Mr. Matsubara sent Plaintiff an email stating that Plaintiff should not give Mr. Flores reasons to attack Plaintiff.

35.     Nothing was done as a result of Plaintiff's complaints against Mr. Flores and against Defendant Shin's discriminatory comments.

36.     Plaintiff was forced to continue working alongside Mr. Flores and Defendant Shin.

37.     Neither Defendant Shin or Mr. Flores were disciplined, and Plaintiff's complaints were not investigated.

38.     However, Defendants Shin's discriminatory behavior and comments did not stop at this incident and continued throughout Plaintiff's employment.

39.     In Plaintiff's less than three (3) months with NAN, Plaintiff had at

least four (4) private conversations with Defendant Shin where Plaintiff either reported

illegal behavior at NAN or refused to participate as NAN's attorney in illegal actions at

NAN.

40.    The following are the concerns Plaintiff raised with Defendant Shin

from April 2019 to June 2019:

a. Plaintiff told Defendant Shin not to try and cheat HART by trying to double dip and collect against HART and then turn run around and collect against the subcontractor. Defendant Shin had asked Plaintiff to do this and make these claims against the subcontractor and not disclose the claims to HART. Plaintiff refused, at which point Defendant Shin threatened Plaintiff with termination and directed ethnic insults towards Plaintiff.

b. Plaintiff also expressed concerns that NAN and Defendant Shin were engaging in expressing inconsistent and dishonest positions in making claims against both TMF and HART for the sole purpose of monetary gain. When Plaintiff expressed his concerns regarding the, at minimum unethical behavior and attempt at double dipping at the expense of taxpayers, once again he was faced with verbal abuse, ethnic slurs, retaliation and his job security was threatened.

c. Plaintiff told Defendant Shin not to cheat on the section 801 of the federal contracting law where small business is favored by NAN trying to set up a shell company and then trying to use the shell company to gain a federal contract. Plaintiff repeatedly warned Defendant Shin to stop, and once again Defendant Shin responded with threats, hostile behavior and ethnic slurs.

d. Plaintiff also openly complained about Defendant Shin's illegal schemes in obtaining federal government contracts. Plaintiff expressed concerns to Mr. Matsubara and Defendant Shin that their mentor-protégé program for the purposes of obtaining federal contracts might be illegal and might result in the violation of federal laws since Plaintiff believed that this mentor-protégé program was *not* an arms-length transaction. After Plaintiff expressed his concerns, Plaintiff suffered *additional* verbal abuse at the hands of Defendant Shin that involved being called stupid, simple, ignorant and ethnic slurs regarding Plaintiff's Serbia ethnicity. Plaintiff was also

threatened by Defendant Shin that he would be fired. Mr. Matsubara also relayed these threats to Plaintiff saying Defendant Shin will fire Plaintiff unless Plaintiff does what he is told.

e.  Plaintiff expressed to Defendant Shin Plaintiff's concerns regarding FBI interviewing NAN'S employees. Plaintiff found out from Trevor Tamashiro – NAN's other in-house counsel that several employees were approached by FBI. When Plaintiff asked Defendant Shin and Mr. Matsubara what was going on, he was threatened with his employment and told to mind his own business.

f.  Plaintiff told Defendant Shin that it's illegal to blackmail NAN's subcontractors by threatening to report them to the FBI if they do not pay.

g.  Plaintiff told Defendant Shin that Plaintiff could not represent Defendant Shin's friends who were just released from prison since that would be a conflict with the company since he was planning to hire these ex-prisoners. Defendant Shin personally asked Plaintiff to do this.

h.  Further, on several occasions, Defendant Shin blatantly lied and expressed facts to Plaintiff about certain legal matters that were simply not true. When Plaintiff told Mr. Matsubara that he would not be comfortable allowing Defendant Shin to testify untruthfully in any legal proceedings, Plaintiff once again suffered verbal abuse, ethnic slurs, retaliation and more threats regarding his job security by Defendant Shin and Mr. Matsubara.

i.  Plaintiff also complained and expressed his concerns that Defendant Shin and Mr. Matsubara were taking a dishonest and purposely deceitful position towards NAN's surety bond representatives. Plaintiff advised Mr. Matsubara to be honest with NAN's bond surety representatives and ask them for clarification as to who NAN will be using to represent them in their legal proceedings. Plaintiff's foremost concern was compliance with laws an regulations regardless of the company's bottom line. However, Plaintiff was retaliated against and again faced threats and ethnic slurs from Defendant Shin.

41.   Every time Plaintiff would tell Defendant Shin any of the above, Defendant Shin would get angry, verbally abusive and tell Plaintiff he was stupid, call him an ethnic slur and threaten to fire Plaintiff if he didn't do what he was told. Defendant Shin

told Plaintiff on several occasions that he was useless and then specifically ordered Plaintiff not to write an email about documenting Plaintiff's concerns regarding Defendant Shin's illegal schemes and behavior.

42.     Plaintiff offered to document in writing all of his concerns.

43.     Defendant Shin ordered Plaintiff not to document anything.

44.     Plaintiff had these same exact conversations with the vice president Matsubara who would tell Plaintiff to mind his own business, not document it and then Mr. Matsubara would also threaten Plaintiff's employment by saying that Defendant Shin is not happy with Plaintiff and that he is useless.

45.     Plaintiff also repeatedly complained to NAN's management regarding Defendant Shin's hostile and discriminatory behavior, including asking Defendant Shin to stop engaging in directing ethnic and homophobic slurs towards Plaintiff.

46.     Several times Defendant Shin used homophobic slurs against Plaintiff when Plaintiff refused to do something illegal. Defendant Shin would taunt Plaintiff asking him "what's the matter, are you sissy, you need to ask your boyfriend for a permission or something"? Stop being gay and do it".

47.     Defendant Shin also regularly engaged in directing ethnic slurs against Plaintiff. On couple of occasions, Defendant Shin stated that if Plaintiff ever got a girl pregnant in Hawaii, that girl's parents would disown her since the baby would look like Plaintiff. Defendant Shin stated he would disown his kids if they brought back Serbian baby.

48.     Plaintiff complained repeatedly about Defendant's Shin's illegal and discriminatory conduct to NAN management, but nothing was done. Mr. Matsubara kept saying Defendant Shin is owner and he can do whatever he wants.

49.     There was one specific incident roughly one week before Plaintiff was fired where he was on a conference call with Defendant Shin and present with Plaintiff in the room were Mr. Matsubara and Mr. Okimoto.

50.     During this phone call, Mr. Shin was calling Plaintiff stupid and simple and basically verbally abusing Plaintiff because Plaintiff expressed the legal opinion Defendant Shin didn't like.

51.     When Plaintiff asked Defendant Shin to stop it, he got really angry, started cursing and threatening Plaintiff's employment if he don't shut up and stop complaining.

52.     Once they got off the phone, Plaintiff told Mr. Matsubara and Mr. Okimoto that this behavior was not acceptable.

53.      They told Plaintiff to either take it or he would be fired.

54.     From March 18, 2019 until June 10, 2019, Plaintiff complained many times to executive officers of NAN (Wyeth Matsubara and Frank Okimoto and Defendant Shin) about Defendant Shin's illegal schemes, law breaking and his hostile and discriminatory behavior towards Plaintiff.

55.     Defendant Shin regularly directed ethnic slurs, homophobic comments and cursed at Plaintiff, calling him stupid Serbian, gay, ignorant and simple.

56.     When Plaintiff objected to this behavior, Defendant Shin told Plaintiff to shut up or Defendant Shin would fire Plaintiff.

57.     Mr. Matsubara and Frank Okimoto (President of NAN) told Plaintiff on several occasions that Plaintiff must accept Defendant Shin's illegal and discriminatory behavior and if Plaintiff didn't, NAN would fire him.

58.     On one occasion, when Plaintiff warned Defendant Shin not to engage in illegal behavior and refused to help Defendant Shin to engage in such behavior, Defendant Shin told Plaintiff that he is useless. Defendant Shin continued to tell Plaintiff that he is replaceable since Defendant Shin knows many attorneys who will do his "dirty work" and that if Plaintiff keeps refusing, he will be easily replaced.

59.     Then Defendant Shin continued to name such attorneys. One of the attorneys Defendant Shin specifically named that does Defendant Shin's "dirty work" is attorney Richard Wilson.

60.     When Plaintiff warned Defendant Shin that he already once went to jail and that Defendant Shin is already a convicted felon, Defendant Shin stated that he "don't care, prison sentence was easy, and I only paid a small fine." Defendant Shin said it was more than worth it considering how rich he became doing what he is doing.

61.     Plaintiff regularly complained and requested that Defendant Shin refrain from engaging in illegal schemes, and from ethnically insulting, cursing and calling Plaintiff stupid, ignorant, gay or simple.

62.     Thus, from the very beginning of Plaintiff's employment with NAN,

Defendant Shin has engaged in what one could only describe as extremely hostile and discriminatory behavior directed at Plaintiff because Plaintiff kept refusing to engage in illegal behavior as directed by Defendant Shin.

63.     A few days before June 10, 2019, Plaintiff sent an email to Mr. Matsubara complaining about the hostile work environment at NAN.

64.     In the end, as a result of Plaintiff's whistleblowing about Defendant Shin's illegal schemes and law breaking (as described – including but not limited to - in paragraph 40 of this Complaint), and because of Plaintiff's complaints about Defendant Shin's discriminatory behavior towards Plaintiff, on June 10, 2019, Plaintiff was fired without cause or any explanation.

65.     Subsequently, when Plaintiff applied for unemployment insurance a week later, NAN only said that Plaintiff was laid off and not fired for any cause.

66.     On September 13, 2019, Plaintiff filed a discrimination and retaliation complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant NAN and Defendant Shin. (EEOC Charge No. 486-2019-00542)

67.     On October 23, 2019, Plaintiff filed a Complaint with State of Hawaii Circuit Court against Defendant NAN and Defendant Shin which received local press coverage. Plaintiff, among other things, alleged wrongful termination due to him being a whistleblower among other things.

68.     During that time and until the time of filing this Complaint, Plaintiff

is currently working as an attorney at a Honolulu law firm.

69.     Defendant Wilson has his own law office. He currently represents NAN and its owner Defendant Shin against the Plaintiff.

70.     Upon information and belief, Defendant Wilson, NAN and Defendant Shin conspired to have Defendant Shin call Plaintiff's boss at his firm and threaten Plaintiff's employment to apply pressure through Plaintiff's boss in order to get Plaintiff to drop the lawsuit and his EEOC complaint.

71.     As a result, on November 1, 2019, Defendant Shin, in conspiracy and on instruction by NAN and Defendant Wilson, called Plaintiff's boss at the law firm.

72.     Defendant Shin left Plaintiff's boss a voicemail requesting that he call Defendant Shin back.

73.     Plaintiff's boss has no business or current personal relationship with Defendant Shin.

74.     Defendant Shin had no reason to have called Plaintiff's boss other than to deter, harass, intimidate, threaten and/or retaliate against Plaintiff by applying pressure through Plaintiff's boss to get Plaintiff terminated in order to get him to drop his State of Hawaii Circuit Court lawsuit and EEOC complaint against Defendant NAN and Defendant Shin.

75.     Defendant NAN and Defendant Shin were motivated in this attempt by their discriminatory animus based on national origin towards Plaintiff and their need for retaliation.

76.     Plaintiff was deterred, harassed, intimidated, threatened and retaliated by Defendants Shin, NAN and Wilson conspiring to call and calling his boss after Plaintiff filed his State of Hawaii Circuit Court Complaint and EEOC charge against NAN and Defendant Shin. Plaintiff suffered emotional distress and anxiety from being extremely concerned and afraid that Defendant Shin and NAN and Defendant Wilson are trying to take away his current employment as a result of Plaintiff filing his lawsuit and EEOC complaint against NAN and Defendant Shin.

77.     Plaintiff's employment is his only source of income and support.

78.     After this November 1, 2019 call to Plaintiff's boss, Defendant Shin and NAN decided to try again to deter, intimidate, harass and threaten Plaintiff as a result of Plaintiff filing his lawsuit and EEOC complaint.

79.     Defendant Dwyer is a State of Hawaii licensed attorney and "Of Counsel" with Case Lombardi & Pettit. He has an undisclosed relationship with Defendant Shin.

80.     Few weeks later after the first attempt to contact Plaintiff's boss, Defendant Dwyer, in conspiracy and on instruction by NAN and Defendant Shin, approached Plaintiff's boss at a social function and asked Plaintiff's boss if there is anything he could do to make this lawsuit and EEOC complaint go away.

81.     Defendant Dwyer conspired with Defendant Shin and NAN, who were motivated by their ethnic and national origin bias against Plaintiff, to deter, harass, intimidate, threaten and/or retaliate against Plaintiff by trying to influence Plaintiff's

- 14 -

boss to apply pressure through threatening Plaintiff's employment in order for Plaintiff to drop his lawsuit and EEOC charge.

82.     Once again, Plaintiff was deterred, harassed, intimidated, threatened and retaliated by Defendant Shin, NAN and Defendant Dwyer approaching Plaintiff's boss to threaten Plaintiff's employment after Plaintiff filed his State of Hawaii Complaint and EEOC charge against NAN. Plaintiff suffered emotional distress and anxiety from being extremely concerned and afraid that Defendant Shin, NAN and Defendant Dwyer are trying to take away his current employment as a result of Plaintiff filing his lawsuit and EEOC complaint against NAN.

83.     However, this determent, harassment, intimidation, threats and retaliation did not stop here. Few months later, Plaintiff notified Defendant Wilson that Plaintiff will be filing a <u>federal civil rights</u> lawsuit against Defendant Wilson, Defendant Shin, NAN and Defendant Dwyer for violation of Plaintiff's civil rights.

84.     Literally few days later, Defendant Wilson, Defendant Shin, NAN and Defendant Revere conspired to deter, harass, intimidate and threaten Plaintiff as result of his intention to file his federal civil rights lawsuit.

85.     Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN, emailed and called a named partner at Plaintiff's firm. Defendant Wilson and Defendant Revere complained about Plaintiff and his intention to file a federal civil rights lawsuit, made up bunch of factual lies about Plaintiff's character and behavior and defamed Plaintiff to the partners of his firm by making false

- 15 -

accusations about Plaintiff's character and behavior.

86.     Because of that, Plaintiff's current standing in his firm and possible future partnership was threatened and brought in question once Plaintiff's boss found about false allegations made by Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN. Additionally, Plaintiff's standing and reputation in his firm have been damaged by actions of the Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN.

87.     Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN deterred, harassed, intimidated, threatened and/or retaliated against Plaintiff by trying to influence Plaintiff's boss to apply pressure through threatening Plaintiff's employment in order for Plaintiff to drop his intention of filing a federal civil rights lawsuit against them.

88.     Once again, Plaintiff was deterred, harassed, intimidated and threatened by Defendant Shin, NAN, Defendant Wilson and Defendant Revere approaching Plaintiff's bosses at his firm to threaten Plaintiff's employment after Plaintiff notified Defendant Wilson of his intention to file a federal civil rights lawsuit against the Defendants.

89.     Plaintiff was also defamed by Defendants Wilson and Revere in conspiracy with Defendants Shin and NAN in the eyes of his partners at his firm.

90.     Plaintiff suffered emotional distress and anxiety from being extremely concerned and afraid that Defendant Shin, NAN, Defendant Wilson and

Defendant Revere are trying to take away his current employment as a result of Plaintiff's intention of filing a federal civil rights lawsuit.

91.     Plaintiff's employment is his only source of income and support.

### COUNT I: VIOLATION OF 42 U.S.C. § 1985(2)
(Against Defendants Shin, Wilson and NAN)

92.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

93.     Defendants Shin, Wilson and NAN obstructed justice through intimidation of a party (Plaintiff) in violation of 42 U.S.C. § 1985(2).

94.     Defendants Shin, Wilson and NAN conspired to deter Plaintiff and retaliate against him from further pursuing his EEOC complaint and subsequent federal lawsuit (after EEOC has issued its determination) by intimidation and threats by threatening Plaintiff's employment by Defendant Shin (in conspiracy and assistance with NAN and Defendant Wilson) calling his boss in order to get him fired and apply pressure through Plaintiff's employment to drop his EEOC complaint against Defendant NAN and Defendant Shin.

95.     Further, Defendants Shin, Wilson and NAN conspired for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in State of Hawaii, with intent to deny Plaintiff the equal protection of the laws, and to injure him or his property for lawfully enforcing Plaintiff's rights (when Plaintiff filed his State of Hawaii Circuit Court Complaint against Defendant NAN and Defendant Shin) to the equal protection of the laws. Defendant NAN and Defendant Shin were

motivated in this attempt by their discriminatory animus based on national and ethnic origin of the Plaintiff.

96.    Plaintiff was deterred, harassed, intimidated, threatened, impeded, hindered, obstructed and retaliated by Defendants Shin, NAN and Wilson when Defendant Shin (in conspiracy with NAN and Defendant Wilson) called his boss (after Plaintiff filed his State of Hawaii Circuit Court Complaint and EEOC charge against NAN and Defendant Shin) in order to get him fired and apply pressure through Plaintiff's employment to drop his legal actions against Defendant NAN and Defendant Shin.

97.    As a direct and proximate cause of Defendants Shin, NAN and Wilson's actions, Plaintiff suffered emotional distress and anxiety from being extremely concerned and afraid that Defendant Shin and NAN and Defendant Wilson are trying to take away his current employment as a result of Plaintiff filing his lawsuit and EEOC complaint against NAN and Defendant Shin.

98.    As a direct and proximate cause of Defendants Shin, NAN and Wilson's actions, Plaintiff's standing, reputation and future of his employment and future partnership in his law firm was threatened and  brought in question damaging Plaintiff's property interest in his continuing employment.

99.    Plaintiffs was damaged in an amount to be proven at trial.

## COUNT II: VIOLATION OF 42 U.S.C. § 1985(2)
(Against Defendants Shin, NAN and Dwyer)

100. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

101. Defendants Shin, Dwyer and NAN obstructed justice through intimidation of a party (Plaintiff) in violation of 42 U.S.C. § 1985(2).

102. Defendants Shin, Dwyer and NAN conspired to deter Plaintiff and retaliate against him from further pursuing his EEOC complaint and subsequent federal lawsuit (after EEOC has issued its determination) by intimidation and threats by threatening Plaintiff's employment by Defendant Dwyer (in conspiracy and on instruction with NAN and Defendant Shin) approaching Plaintiff's boss at a social function and asking Plaintiff's boss if there is anything he could do to make the lawsuit and EEOC complaint against NAN and Defendant Shin go away.

103. Further, Defendants Shin, Dwyer and NAN conspired for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in State of Hawaii, with intent to deny Plaintiff the equal protection of the laws, and to injure him or his property for lawfully enforcing Plaintiff's rights (when Plaintiff filed his State of Hawaii Circuit Court Complaint against Defendant NAN and Defendant Shin) to the equal protection of the laws. Defendant NAN and Defendant Shin were motivated in this attempt by their discriminatory animus based on national and ethnic origin of the Plaintiff.

104.    Plaintiff was deterred, harassed, intimidated, threatened, impeded, hindered, obstructed and retaliated by Defendants Shin, NAN and Dwyer when Defendant Dwyer (in conspiracy with NAN and Defendant Shin) approached Plaintiff's boss at a social function and asking Plaintiff's boss if there is anything he could do to make the lawsuit and EEOC complaint against NAN and Defendant Shin go away. Defendants Shin, Dwyer and NAN attempted to apply pressure through Plaintiff's employment to drop his legal actions against Defendant NAN and Defendant Shin.

105.    As a direct and proximate cause of Defendants Shin, NAN and Dwyer's actions, Plaintiff suffered emotional distress and anxiety from being extremely concerned and afraid that Defendant Shin and NAN and Defendant Dwyer are trying to take away his current employment as a result of Plaintiff filing his lawsuit and EEOC complaint against NAN and Defendant Shin.

106.    As a direct and proximate cause of Defendants Shin, NAN and Dwyer's actions, Plaintiff's standing, reputation and future of his employment and future partnership in his law firm was threatened and brought in question damaging Plaintiff's property interest in his continuing employment.

107.    Plaintiffs was damaged in an amount to be proven at trial.

**COUNT III: VIOLATION OF 42 U.S.C. § 1985(2)**
(Against Defendants Shin, Wilson, Revere and NAN)

108.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

109.    Defendants Shin, Wilson, Revere and NAN obstructed justice through intimidation of a party (Plaintiff) in violation of 42 U.S.C. § 1985(2).

110.    Defendants Shin, Wilson, Revere and NAN conspired to deter Plaintiff and retaliate against him from further pursuing his EEOC complaint and federal civil rights lawsuit by intimidation and threats by threatening Plaintiff's employment.

111.    Few days after Plaintiff notified Defendant Wilson that Plaintiff will be filing a <u>federal civil rights</u> lawsuit against Defendant Wilson, Defendant Shin, NAN and Defendant Dwyer for violation of Plaintiff's civil rights, Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN, emailed and called a named partner at Plaintiff's firm. Defendant Wilson and Defendant Revere complained about Plaintiff and his intention to file a federal civil rights lawsuit, made up bunch of lies about Plaintiff and defamed Plaintiff to the partners of his firm by making false accusations about Plaintiff's conduct.

112.    Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN, did this in order to get Plaintiff fired and/or apply pressure through Plaintiff's employment to drop his EEOC complaint and not purse the federal lawsuit as intended against Defendants NAN, Shin, Wilson and Dwyer.

113.    Plaintiff was deterred, harassed, intimidated, threatened and/or retaliated from pursuing his federal lawsuit by Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN, emailing and calling a named partner at Plaintiff's firm and defaming Plaintiff in order to get him fired and apply

- 21 -

pressure through Plaintiff's employment to drop his legal actions against Defendants NAN, Shin, Wilson and Dwyer.

114.    As a direct and proximate cause of Defendants Shin, Wilson, Revere and NAN's actions, Plaintiff suffered emotional distress and anxiety from being extremely concerned and afraid that Defendants Shin, Wilson, Revere and NAN are trying to take away his current employment as a result of Plaintiff intending to file his federal lawsuit against Defendants NAN, Shin, Wilson and Dwyer.

115.    As a direct and proximate cause of Defendants Shin, Wilson, Revere and NAN's actions, Plaintiff's standing, reputation and future of his employment and future partnership in his law firm was threatened and brought in question damaging Plaintiff's property interest in his continuing employment.

116.    Plaintiff's current standing in his firm and possible future partnership was threatened and brought in question once Plaintiff's boss found about false allegations made by Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN. Additionally, Plaintiff's standing and reputation in his firm have been damaged by actions of the Defendant Wilson and Defendant Revere, in conspiracy and assisted by Defendants Shin and NAN.

117.    Plaintiffs was damaged in an amount to be proven at trial.

## COUNT IV: VIOLATION OF Title VII (42 U.S.C. § 2000e, et seq.)
### (Against Defendant NAN)

118.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

119.    Defendant NAN violated Title VII (42 U.S.C. § 2000e, et seq.) by not preventing Defendant Shin (owner of NAN and Plaintiff's supervisor) from unwelcomed, severe, continuing and pervasive harassment of Plaintiff based on Plaintiff's race, national and ethnic origin; and retaliating against Plaintiff after Plaintiff complained about such discriminatory treatment and after Plaintiff being a whistleblower.

120.    Defendant Shin continuously and pervasively directed ethnic and homophobic insults and slurs at Plaintiff during Plaintiff's entire length of employment at NAN.

121.    These ethnic and homophobic insults were especially severe and pervasive after each time Plaintiff refused to engage in illegal activity as directed by Defendant Shin.

122.    Plaintiff even suffered a physical attack from NAN's vice president Nick Flores after which Defendant Shin called Plaintiff "weaker than Americans" as result of his complaint about the attack.

123.    Despite Plaintiff' complaints to Defendant Shin and other NAN's management, nothing was done to rectify this discriminatory harassment.

124.    After complaining several times, Plaintiff was told on several occasions by Defendant Shin and other NAN's executives that Plaintiff must endure the offensive conduct as a condition of his continuing employment.

125.    In the end, Defendant NAN, on direction by Defendant Shin, fired Plaintiff due to Plaintiff being a whistleblower and because of his complaints about the discriminatory harassment he suffered during his employment at NAN.

126.    As a direct and proximate cause of Defendants NAN's actions, Plaintiff suffered emotional distress, economic, general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand and pray for judgment:

A.    On all Counts against ALL Defendants;

B.    For an award of special, economic, consequential and general damages to Plaintiffs from ALL Defendants, jointly and severally, in amount proven at trial;

C.    Punitive damages, as the facts aforesaid constitute extreme and outrageous behavior which exceeds all bounds usually tolerated by decent society.  In committing the above acts and omissions, Defendants acted wantonly and/or oppressively and/or with such malice as implies a spirit of mischief or criminal indifference to civil obligations and/or there has been some willful misconduct that demonstrates that entire want of care which would raise the presumption of a conscious indifference to consequences, justifying an award of punitive or exemplary damages in an amount to be proven at trial;

D.    Attorneys' Fees and costs pursuant to the applicable law;

E.      Such other and further relief as this Court deems just and proper.


DATED:  Honolulu, Hawaii; June 19, 2020.

/s/ BOSKO PETRICEVIC
PRO-SE