BOSKO PETRICEVIC        8443
P.O. Box 38
Honolulu, Hawaii 96810
Telephone:  (402) 301-3716
E-mail:        boskopetricevic@hotmail.com

PRO-SE PLAINTIFF

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BOSKO PETRICEVIC,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK SHIN; RICHARD WILSON; LAW OFFICE OF RICHARD E. WILSON; JOHN DWYER; TERRANCE REVERE; REVERE & ASSOCIATES LLLC; NAN INC., a domestic profit corporation,<br><br>Defendants. | CIVIL NO. CV 20-00283 JAO-WRP<br><br>**PLAINTIFF'S MOTION TO STAY DISCOVERY, APPOINT DISCOVERY MASTER AND REQUEST FOR ATTORNEY'S FEES AND COSTS**<br><br>Judge: Honorable Jill A. Otake<br><br>Trial date: December 6, 2021, 9:00 AM |

**PLAINTIFF'S MOTION TO STAY DISCOVERY, APPOINT DISCOVERY MASTER AND REQUEST FOR ATTORNEY'S FEES AND COSTS**

Plaintiff hereby respectfully moves this Honorable Court to stay discovery, and appoint Discovery Master at the full expense to the Defendants due to their bad faith actions prior to meet and confer, abusive scheduling of depositions, intending to engage in discovery designed to harass and personally attack Plaintiff by excavating his private life and history, and attempting to delay the Plaintiff from seeing a subpoena duces tecum by filing a misleading certificate of service. Lastly, Plaintiff is seeking Attorney's Fees and Costs for having to file this motion.

## Table of Contents

**I.    DUTY TO MEET AND CONFER** …………………………………..3

**II.**

**INTRODUCTION**……………………………………………….ERROR!

BOOKMARK NOT DEFINED.

**III.    ARGUMENT**……………………………………………………3

    **A. Plaintiff requests appointment of Discovery Master and for Defendants to pay for all of the Discovery Master's services……………………………..3**

    **1.    Defendants engaged in bad faith meet and confer prior to Plaintiff filing this instant Motion and have engaged in abusive scheduling of depositions…………………………………………………………………..4**

    **2.    Defendants Wilson and Revere are engaging and intending to engage in abusive discovery designed to harass and personally attack the Plaintiff as evidenced by irrelevant witnesses that Defendants Wilson and Revere named in their Initial Disclosures …………………………………12**

    **3.    Defendants Nan, Inc and Shin have attempted to delay Plaintiff from seeing a Subpoena Duces Tecum by not notifying the Plaintiff about the issued subpoena, and then subsequently filing a misleading certificate of service…………………………………………………………………19**

    **B. Discovery in this lawsuit should be stayed……………………………..21**

    **C. Attorney's Fees and Costs should be granted to Plaintiff for filing this Motion……………………………………………………………………..24**

**IV.    CONCLUSION** .............................ERROR! BOOKMARK NOT DEFINED.

## I.    <u>DUTY TO MEET AND CONFER</u>

Prior to filing this motion, Plaintiff has met and conferred with all of the Defendants on October 23, 2020. Plaintiff has discussed with all of the Defendants every request hereby being made in this motion. Plaintiff is filing this motion since he could NOT reach an agreement with the Defendants on any of the issues hereby requested from this Honorable Court to provide relief on. **<u>See Petricevic Declaration - ¶ 4-9</u>**.

## II.    <u>INTRODUCTION</u>

Plaintiff is filing this motion to obtain following relief from this Honorable Court:

1. Plaintiff requests appointment of Discovery Master and for Defendants to pay for all of the Discovery Master's services for the reasons explained below.

2. Plaintiff requests stay and postponement of the discovery until after February 2021 court-ordered mediation between Plaintiff and Defendants Nan, Inc. and Patrick Shin for the reasons explained below.

3. Plaintiff requests attorney's fees and costs for having to file this motion due to Defendants' bad faith conduct regarding the meet and confer and refusing to follow discovery rules.

## III.    <u>ARGUMENT</u>

### A. <u>Plaintiff requests appointment of Discovery Master and for Defendants to pay for all of the Discovery Master's services</u>

Plaintiff requests appointment of the Discovery Master and for Defendants to pay for all of the Discovery Master's services for the following reasons:

1. Defendants have engaged in a bad faith conduct prior to meet and confer conference that is a pre-requisite to Plaintiff filing this instant Motion, and have engaged in abusive scheduling of depositions.

2.  Defendants Wilson and Revere are engaging and intending to engage in abusive discovery designed to harass and personally attack the Plaintiff as evidenced by irrelevant witnesses that Defendants Wilson and Revere named in their Initial Disclosures (**See W&R Disclosures).**

3. Defendants Nan, Inc and Shin have attempted to delay Plaintiff from seeing a Subpoena Duces Tecum by not notifying the Plaintiff about the issued subpoena, and then subsequently filing a misleading certificate of service.

Plaintiff will address and explain each issue below.

1. **Defendants engaged in bad faith meet and confer prior to Plaintiff filing this instant Motion and have engaged in abusive scheduling of depositions**

Before filing this motion, Plaintiff sent an email on October 19, 2020 at 10:42 AM to Counsels Wilson, Revere and Rand (counsels for all of the Defendants) listing seven (7) issues Plaintiff wanted to discuss during the required meet and confer. **See Exhibit 1.** Among others, Plaintiff wanted to discuss the following issues specifically:

1. Delaying all depositions and all discovery until at least November 30, 2020;

2.     Delaying all depositions of anyone related to Defendants Nan, Inc and Defendant Shin until after court-ordered mediation is held in February of 2021;

3.     Delaying Plaintiff's deposition until after court-ordered mediation is held in February of 2021;

and

4.     Delaying all other discovery until after court ordered mediation is held in February of 2021.

On October 19, 2020 at 10:52 AM, Counsels Wilson, Revere and Rand sent Plaintiff an email listing five (5) issues they wanted to discuss. **See Exhibit 2.** Subsequently to these emails being exchanged, all parties have agreed to hold the **meet and confer conference on October 23, 2020 at 9:30 am**. **See Exhibits 3 -7.**

Now, if the parties were to engage in good faith meet and confer conference scheduled for **October 23, 2020 at 9:30**, Defendants should have NOT taken any actions regarding the issues Plaintiff wanted to discuss during this meet and conference. **See Exhibit 1.** In other words, until parties had a chance to meet and confer on October 23, 2020 at 9:30 am (which was only 4 days from October 19, 2020 – the time Plaintiff sent an email requesting meet and confer), Defendants should have NOT scheduled any depositions or served any discovery requests, since these were the issues Plaintiff wanted to meet and confer about prior to him filing his Motion to Stay discovery.

After all, how can the parties meet and confer in good faith if Defendants, prior to the October 23, 2020 conference, already make their decision and schedule depositions and/or

serve discovery requests on Plaintiff. This course of action would imply that Defendants have no intention on listening to anything Plaintiff has to say during the meet and confer since they have already made their decision. Unfortunately, this is exactly what happened.

On October 20, 2020, at 7:44 am, Defendants Wilson and Revere served on the Plaintiff their First Request for Production of Documents and Things to Plaintiff, which were due 30 days from October 20, 2020. **See Exhibit 8.**

Also, on October 20, 2020 (at 9:46 am), and without waiting to hear from Mr. Rosenbaum about his availability, Defendants Wilson and Revere went ahead and scheduled a deposition (and issued a subpoena for same) of Mr. Rosenbaum for November 5, 2020. **See Exhibit 9.**

Mr. Rosenbaum promptly notified the Defendants Wilson and Revere few minutes later by email on October 20, 2020 at 9:58 am - **See Exhibit 10** - that he was not available on November 5, 2020. Few minutes later, on October 20, 2020 at 10:04 am, Defendants Wilson and Revere attempted to re-schedule Mr. Rosenbaum's deposition for November 13, 2020. **See Exhibit 11.**

In response to this, Plaintiff, 3 times, on October 20, 2020 at 10:06 am - **See Exhibit 12**, and on October 20, 2020 at 10:08 am - **See Exhibit 13**, and again on October 20, 2020 at 10:28 am - **See Exhibit 13**, emailed the Defendants notifying them that he is not available on November 13, 2020 due to the already explained reasons (birth of his child around that date - **See Exhibit 1)** and making clear to Defendants that scheduling of any

depositions is subject to meet and confer conference which Plaintiff already requested on October 19, 2020. **See Exhibit 13.**

Sadly, Plaintiff's pleas to the Defendants Wilson and Revere to wait and discuss these issues during the meet and confer conference fell on deaf ears. This Honorable Court can judge Defendants Wilson and Revere's responses for itself.   **See Exhibits 14-15.** Perhaps the most telling response about what Defendants Wilson and Revere really thought about the meet and confer conference came from Defendant Wilson when he said the following in an email sent to Plaintiff on October 20, 2020 at 10:39 am:

> **"Bosko -- Enough, read the rules.  We do not need to meet and confer with you to set a deposition….. "**

**See Exhibit 15.**

In other words, despite the fact that Plaintiff sent an email on October 19, 2020 at 10:42 am to counsels Wilson, Revere and Rand specifically stating that one of the issues that Plaintiff wanted to discuss during the required meet and confer, before the filing of his Motion to Stay Discovery, was delaying all depositions and all discovery until at least November 30, 2020 (**See Exhibit 1**), Defendant Wilson stated the very next day, on October 20, 2020 at 10:39 am, that " **We do not need to meet and confer with you to set a deposition." See Exhibit 15.**

This response by Defendant Wilson is definition of bad faith when it comes to meet and confer conferences. If this is what Defendant Wilson thinks and does, why should Plaintiff wait to file his Motion to Stay Discovery until meet and confer conference is held?

Obviously, Defendants had their mind made up already and were taking actions accordingly.

Needless to say, it doesn't take a genius to figure out what happened next. On October 20, 2020 at 10:46 am, Defendants Wilson and Revere went ahead and re-scheduled a deposition (and issued a subpoena for same) of Mr. Rosenbaum for November 13, 2020. **See Exhibit 16.**

However, this sort of bad-faith behavior by the Defendants did not stop there. **In an extraordinary attempt to really prove his point that he can do whatever he wants, and schedule depositions whenever and however he wants** (meet and confer conferences and discovery rules be damned), Defendant Revere, on October 20, 2020 at 11:09 am, sent a following email to Mr. Rosenbaum where he stated the following:

> **"Also, Joe, would you want to do your deposition at noon today and just get it over with?"**

**See Exhibit 17.**

In other words, on less than a one-hour notice, Defendant Revere attempted to re-schedule an already scheduled deposition (for November 13, 2020 with the subpoena being issued for same - **See Exhibit 16**) for October 20, 2020 "at noon".

Naturally, on October 2020, 2020 at 11:33 am, Mr. Rosenbaum declined Defendant Revere's "deposition over lunch" offer since he (shockingly) already had other obligations. **See Exhibit 18.**

Plaintiff, on the other hand, didn't even see this Defendant Revere's October 20, 2020, 11:09 am "deposition over lunch" email until later that day, which means that

Plaintiff could have missed a deposition in his own case if Defendant Revere was successful (if Mr. Rosenbaum agreed) in scheduling a deposition over lunch on less than one-hour notice.

**One must ask himself!** Is Plaintiff supposed to check his email every 20 minutes just in case Defendant Revere might schedule a deposition over lunch, especially during the time when Plaintiff is awaiting the birth of his child? Or should the Plaintiff just listen to Defendant Revere's "advice" provided in Defendant Revere's email sent on October 20, 2020 at 10:27 am when Defendant Revere stated the following:

> "As long as that date works for Richard and Richard, we will proceed with Joe's [Rosenbaum] deposition on the 13th. **You need not attend if you do not wish to do so.**"

Emphasis added.

**See Exhibit 14.**

It is obvious from these emails sent by Defendants Wilson and Revere that they think they do not need to engage in good faith meet and confer, and that they can just schedule depositions anytime they want since Plaintiff does "need not attend". If this sort of behavior is not bad faith, or doesn't fall under the abuse of discovery rules and/or abusive scheduling of depositions, Plaintiff is then at a loss for what qualifies.

Anyways, the bad faith regarding the meet and confer did not stop at the above described events. On October 21, 2020 at 11:14 am (2 days prior to the meet and confer conference scheduled to be held on October 23, 2020) Defendants Wilson and Revere went ahead and scheduled the deposition of the Plaintiff for December 1, 2020. **See Exhibit 19.**

Despite the scheduling of Plaintiff's deposition also being subject to meet and confer as pursuant to an email Plaintiff sent on October 19, 2020 at 10:42 AM (item #4 in this email which proposed to delay Plaintiff's deposition until after court ordered mediation was held in February of 2021), Defendants Wilson and Revere once again ignored their duty to meet and confer in good faith and went ahead and took decisive action regarding the issue parties were supposed to meet and confer.

Once again, Plaintiff sent an email to Defendants (on October 21, 2020 at 1:09 pm) imploring and pleading with them to engage in good faith meet and confer scheduled for October 23, 2020. Plaintiff additionally explained to Defendants his concerns over Defendants' actions over the last 2 days and made clear to the Defendants that scheduling of any depositions was subject to meet and confer which Plaintiff already requested on October 19, 2020. **See Exhibit 20**

Sadly, and once again, Plaintiff's pleas to the Defendants Wilson and Revere fell on deaf ears. This Honorable Court can judge Defendants Wilson's response for itself. **See Exhibit 21**

Needless to say, Defendant Wilson did not believe that he needed to wait for meet and confer conference to take decisive actions regarding the issues that were supposed to be discussed during the meet and confer conference scheduled for October 23, 2020.

After all of the above described events, it doesn't take a genius to predict the result of the meet and confer conference parties held on October 23, 2020. During the October 23, 2020 meet and confer conference, all 7 of the issues Plaintiff listed in his email (**See**

**Exhibit 1**) and all 5 of the issues listed in Defendants' email (**See Exhibit 2**) were, in fact, discussed. Parties have NOT reached an agreement to any of the issues listed in Exhibits 1 and 2, except the item #3 listed in Exhibit 1. **See Petricevic Declaration.**

Parties did agree to delay any deposition of anyone from proposed Defendants Clay Chapman Iwamura Pulice & Nervell law firm until settlement agreement is signed and executed between Plaintiff and Clay Chapman Iwamura Pulice & Nervell. **See Petricevic Declaration.**

Unsurprisingly, the only thing parties managed to agreed on was the only thing Defendants did not already take decisive action on, which was delaying any deposition of anyone from proposed Defendants Clay Chapman Iwamura Pulice & Nervell law firm. This was the only thing Defendants Wilson and Revere did not act upon prior to the meet and confer conference.

Another thing that was discussed during the October 23, 2020 meet and confer conference was Plaintiff's request to Defendants Wilson and Revere for a 30-day extension to respond to Defendants Wilson and Revere's First Request for Production of Documents and Things to Plaintiff which was due 30 days from October 20, 2020, the date Defendants served this discovery request on the Plaintiff. (**See Exhibit 8**). **See Petricevic Declaration.**

Plaintiff explained to Defendants that his first child is due to be born on or after October 28, 2020 (doctor-specified due date) and that he would like to just focus on his first-born child in these tough times (covid pandemic), and that he didn't want to worry about anything else during the baby's first 30 days or so. Hence, Plaintiff requested a

courtesy 30-day extension which would make the responses due on December 20, 2020,

instead of November 20, 2020. Defendants Wilson and Revere denied this request without

providing any legitimate reasons. **See Petricevic Declaration.**

In conclusion, as explained above, Defendants have engaged in bad faith meet

and confer prior to Plaintiff filing this instant Motion, and have also engaged in abusive

scheduling of depositions. Plaintiff doesn't want to be filing motions with the Court

every time Defendants engage in one of these abuses. The most efficient way of dealing

with these abuses by Defendants is appointment of Discovery Master to manage the

discovery process.

2. **Defendants Wilson and Revere are engaging and intending to engage in abusive discovery designed to harass and personally attack the Plaintiff as evidenced by irrelevant witnesses that Defendants Wilson and Revere named in their Initial Disclosures**

If the above described events (attempted scheduling of depositions over lunch on

less than one-hour notice - to name one – **See Exhibits 17 and 18**) are not a sign of

things to come, and just what kind of circus Defendants Wilson and Revere will turn

this lawsuit into, perhaps the witness list they submitted in their Initial Disclosures (filed

on October 21, 2020) can provide further insight. **See W&R Disclosures**

The witness list has 30 entries, and at most 14 of these entries are actually

relevant. It is obvious from this witness list that Defendants Wilson and Revere went

digging through Plaintiff's personal life and that they are intending to turn this lawsuit

into a gigantic circus designed to embarrass and humiliate Plaintiff. **See Petricevic**

**Declaration.**

As way of a preview, before Plaintiff starts explaining just who some of these "witnesses" actually are, and how irrelevant they actually are to this lawsuit, here are some of the people that Defendants listed as "relevant witnesses":

1.  Plaintiff's ex-girlfriend he hasn't spoken to in years
2.  Plaintiff's former gym he hasn't been to in over 5 years
3.  An individual with whom Plaintiff had a dispute over a paddle-tennis match
4.  Plaintiff's former landlord
5.  A paddle-tennis club where Plaintiff is not even a member
6.  A representative of the Gary Galiher estate. Mr. Galiher has been dead since 2016

All of the events and facts listed in the First Amended Complaint and/or Proposed Second Amended Complaint happened after March 18, 2019 – the date Plaintiff began work for Nan, Inc. Not a single fact or event listed in the First Amended Complaint and/or Proposed Second Amended Complaint happened before March 18, 2019. This information is relevant when describing the below listed witnesses that Defendants Wilson and Revere named in their Initial Disclosures (**See W&R Disclosures**).

Witness #9 listed in W&R Disclosures is a Representative of the Property Rights Law Group. Property Rights Law Group is a defunct organization that Plaintiff briefly worked for about 3 weeks in 2012. Plaintiff had a legal dispute with this organization that was settled in 2014. This is a matter of public record on the eCourt*Kokua website. However, Plaintiff has had absolutely NO contact with anyone from this defunct organization since 2014. **See Petricevic Declaration.**

Witness #10 listed in W&R Disclosures is a Representative of the Estate and Law Office of Gary Galiher. Mr. Galiher died in 2016, which is a matter of public record.

Plaintiff never worked for Mr. Galiher, nor did he have any business relationship with him. Plaintiff had a personal dispute with Mr. Galiher that was settled in 2014. However, Plaintiff has had absolutely NO contact with Mr. Galiher or anyone from his Estate and/or Law Office since 2014. **See Petricevic Declaration.**

Witnesses #12, 13 and 15 listed in W&R Disclosures are Margery Bronster, Anthony TJ Quan and Michael J. Green, respectively. Plaintiff has a currently pending, and completely unrelated, lawsuit against these 3 individuals. All of the facts, events and issues that gave rise to his lawsuit against these 3 individuals happened prior to March 18, 2019 – the date Plaintiff began work for Nan, Inc. **See Petricevic Declaration.**

Witnesses #26, 27 and 28 listed in W&R Disclosures are Ted H.S. Hong, William Meheula and Stefan Reinke, respectively. Mr. Hong is Plaintiff's lawyer who represents him in the above-mentioned lawsuit against Margery Bronster, Anthony TJ Quan and Michael Green. Mr. Meheula and Mr. Reinke are lawyers who represent Margery Bronster, Anthony TJ Quan and Michael J. Green, respectively. Prior to this lawsuit against Margery Bronster, Anthony TJ Quan and Michael J. Green, Plaintiff has had absolutely no contact with Mr. Meheula or Mr. Reinke. **See Petricevic Declaration. See Hong Declaration.**

Witness #14 listed in W&R Disclosures is David Schulmeister. Plaintiff's only contact and/or relationship with Mr. Schulmeister was that Mr. Schulmeister and Plaintiff were opposing counsels in an arbitration hearing that Plaintiff handled while he

- 14 -

worked for Clay Chapman Iwamura Pulice & Nervell. Granted, this arbitration hearing was contentious, but Plaintiff has not had any personal legal dispute with Mr. Schulmeister of any kind. Plaintiff is no longer involved in this arbitration hearing, and therefore Plaintiff has no longer any contact with Mr. Schulmeister. **See Petricevic Declaration.**

Witness #16 listed in W&R Disclosures is a Representative of CrossFit Hawaii. CrossFit Hawaii is a gym Plaintiff used to go to exercise. Plaintiff has left this gym on or about September of 2015 when his membership expired. Plaintiff has NOT stepped a foot in this gym since September of 2015. Plaintiff has had absolutely NO contact with any representative of CrossFit Hawaii or CrossFit Hawaii since September of 2015. Plaintiff never had a lawsuit or a settlement of any kind with CrossFit Hawaii. **See Petricevic Declaration.**

Witness #17 listed in W&R Disclosures is a Representative of the Pacific Club. Plaintiff has never been a member of the Pacific Club. Plaintiff never had a lawsuit, legal dispute or a settlement of any kind with the Pacific Club. Plaintiff was invited as a guest to the Pacific Club several times to play paddle tennis. Plaintiff also went there few times to eat lunch. **See Petricevic Declaration.**

Witness #21 listed in W&R Disclosures is Megan Kau. Ms. Kau is a woman Plaintiff briefly dated from November 2016 to February 2017. Plaintiff never had a lawsuit, legal dispute or a settlement of any kind with Ms. Kau. Plaintiff hasn't spoken to Ms. Kau in couple of years. **See Petricevic Declaration.**

- 15 -

Witness #22 listed in W&R Disclosures is Brandee Faria. Ms. Faria was Plaintiff's landlord from May 2015 until August 2019. Plaintiff never had a lawsuit, legal dispute or a settlement of any kind with Ms. Faria. **See Petricevic Declaration.** **See Faria Declaration**.

Witness #23 listed in W&R Disclosures is Vladimir Sasic. Mr. Sasic and Defendant Revere know each other personally. Plaintiff's very last interaction with Mr. Sasic was when they had a verbal argument over a paddle-tennis match that they both participated in at the Pacific Club in either year 2011 or year 2012. Plaintiff didn't like Mr. Sasic's line calls during the paddle-tennis match, and Mr. Sasic presumably didn't like Plaintiff's comments about his line calls, and about him personally. Needless to say, they are not friends any longer. However, Plaintiff never had a lawsuit, legal dispute or a settlement of any kind with Mr. Sasic. Plaintiff has had absolutely NO contact with Mr. Sasic since 2012, at the latest. **See Petricevic Declaration.**

Witness #20 listed in W&R Disclosures are Representatives and employees of the Department of the Attorney General, State of Hawaii. Plaintiff worked at the Department of the Attorney General, State of Hawaii from June 2013 until March 15, 2019 when he left to work for Nan, Inc. Plaintiff never had a lawsuit, legal dispute or a settlement of any kind with the Department of the Attorney General, State of Hawaii or any of its representatives or employees. **See Petricevic Declaration.**

Witnesses #29 listed in W&R Disclosures are "Any witnesses identified in any and all State Court actions involving Plaintiff". These "witnesses" listed under #29

- 16 -

perhaps paint the most accurate picture of Defendants' true intentions during the upcoming discovery process. They want to excavate Plaintiff's past to harass and personally attack him, no matter how irrelevant it is to the instant lawsuit.

NONE of the above described 16 witnesses are either mentioned in the First Amended Complaint and/or Proposed Second Amended Complaint nor do ANY of them have any personal or relevant knowledge regarding any of the facts or issues in this lawsuit. Plaintiff has no idea as to the relevancy of any of these witnesses other than for Defendants to harass and personally attack the Plaintiff by bringing up his personal life, dating history and anyone that Plaintiff had a dispute with, not matter how small or silly.

Plaintiff did twice email Defendant Revere (first time on October 23, 2020; and second time on October 27, 2020 - **See Exhibit 25; See Petricevic Declaration**) asking him about the witness list he submitted in the W&R Disclosures, and the relevancy of the above listed witnesses, specifically Mr. Sasic, Ms. Galiher, CrossFit Hawaii, Ms. Faria and others.

Defendant Revere's responses to Plaintiff's inquiry about the witness list and the relevancy of the above listed witnesses were as follows (**See Exhibit 25; See Petricevic Declaration**):

> "Aww shucks." ………. Over the course of two meet and confers and the meeting with the court, you indicated your preference for formalized discovery.  While I am loathe to offer anything close to advice to pro se litigants, I suggest you take advantage of that.  We reserve our right to assert our work product privileges."

AND

- 17 -

"Do these witnesses make you nervous for some reason?  Given your stated aversion for informal discovery, I'm afraid I can't accommodate you at this time.  Please provide me with formal discovery requests. After you get your complaint straightened out, please."

**See Exhibit 25**

It is obvious from the witnesses described above that Defendants listed in W&R Disclosures, which have no relevancy to this matter other than to harass Plaintiff and excavate his personal life, and from Defendant Revere's responses about the relevancy of these witnesses, that Defendants Wilson and Revere are clearly intending to engage in abusive discovery designed for the sole purpose of personally attacking Plaintiff and excavating his personal life.

As a reminder, Defendants have requested from this Court to increase the amount of total depositions allowed to more than 25. From the above described witness list, it is obvious why Defendants are requesting such a high number of depositions to be allowed. Defendants are intending to excavate Plaintiff's personal life, dating history, paddle-tennis disputes history, gym history, and anyone that Plaintiff had a dispute with, not matter how small or silly.

Plaintiff doesn't want to be filing motions with the Court every time Defendants attempt to depose any of these irrelevant witnesses. The most efficient way of dealing with these intended abuses by Defendants is appointment of Discovery Master to manage the discovery process.

- 18 -

**3.** **Defendants Nan, Inc and Shin have attempted to delay Plaintiff from seeing a Subpoena Duces Tecum by NOT notifying the Plaintiff about the issued subpoena, and then subsequently filing a misleading certificate of service.**

The last reason why Plaintiff is requesting appointment of the Discovery Master and for Defendants to pay for all of the Discovery Master's services is Defendants Nan, Inc and Shin's less than honest handling of the subpoena process, failing to properly notify the Plaintiff of such subpoena, and timely file the accurate certificate of service.

The story of this discovery abuse begins on October 24, 2020. Ms. Sneed, an attorney for Clay Chapman Iwamura Pulice & Nervell, sent an email to Plaintiff on October 24, 2020 at 9:25 am notifying the Plaintiff that Defendants Nan, Inc and Shin have served a subpoena duces tecum on her client. **See Exhibit 22** (The rest of the email is blacked out due to the Rule 408 confidential discussions).

Review of the actual subpoena duces tecum shows that subpoena was issued and signed on October 23, 2020. **See Exhibit 26-4.** However, Defendants Nan, Inc and Shin have not notified the Plaintiff of this subpoena duces tecum on either October 23 or October 24, 2020, nor did they file appropriate certificate of service with the Court on these dates.

On October 27, 2020 at **3:36 pm**, Plaintiff (since he still hasn't heard a peep from Defendants Nan, Inc and Shin about this subpoena duces tecum that's already been served few days earlier) emailed Defendants Nan, Inc and Shin's counsel – Mr. Rand - inquiring about this subpoena duces tecum. **See Exhibit 23.**

- 19 -

Without ever responding to this email, on October 27, 2020 at **3:47 pm**, Mr. Rand suddenly files a certificate of service regarding this subpoena duces tecum through the CM/ECF system. **See Exhibit 24.**

Plaintiff subsequently, on October 27, 2020, emailed Mr. Rand inquiring about these discrepancies regarding timing of service and timing of certificate of service, but he was ignored. When Plaintiff asked Mr. Rand for an electronic copy of this subpoena duces tecum, Mr. Rand dismissed him and stated that Plaintiff will receive a copy in the mail. Plaintiff didn't receive a copy in the mail until October 30, 2020, 6 days after subpoena was issued and served. **See Petricevic Declaration**

Perhaps the real reason for why subpoena was served on the third party roughly 4 days before Plaintiff was even notified about it is following. One of the items requested in this subpoena duces tecum is a settlement agreement between Plaintiff and Clay Chapman Iwamura Pulice & Nervell. **See Exhibit 26-7.** This settlement agreement was one of the topics of discussions during the October 23, 2020 meet and confer conference. **See Exhibit 2.  See Petricevic Declaration.**

All of the Defendants demanded from Plaintiff to produce this settlement agreement which Plaintiff refused. It is obvious that Defendants Nan and Shin were attempting a run around this dispute by trying to obtain this settlement agreement through a subpoena duces tecum, and that this is the real reason why Defendants Nan and Shin delayed Plaintiff from seeing the subpoena in hopes he wouldn't be able to timely object.

In conclusion, as explained above, Defendants have engaged in bad faith meet and confer prior to Plaintiff filing this instant Motion, and have engaged in abusive scheduling of depositions. Defendants are also attempting to turn this lawsuit, and its discovery process into a vehicle to abuse and humiliate Plaintiff by digging through his personal life, dating history, paddle-tennis disputes history, gym history, and any history where Plaintiff had a dispute with, not matter how small or silly. Lastly, Defendants are even going so far to delay Plaintiff from seeing or knowing about the served subpoenas in hopes he cannot timely object to them if necessary.

Plaintiff doesn't have the time or resources to run to Court every time one of these abuses happen. And judging from the events so far, these abuses will not stop. The most efficient way of dealing with these abuses by Defendants is appointment of Discovery Master to manage the discovery process. Since Defendants are solely responsible for these abuses and necessity of the Discovery Master, it is only fair if they bear the brunt of the entire cost of the Discovery Master's services.

**B. <u>Discovery in this lawsuit should be stayed</u>**

Plaintiff is respectfully requesting that any and all discovery be stayed and postponed until March 1, 2020 for the following 4 reasons:

1.    Plaintiff has until November 13, 2020 to file his Second Amended Complaint. Further, right after that, Plaintiff is intending to file his Motion to Amend the Second Amended Complaint and file the Third Amended Complaint. Since the remaining parties are not sure as to how exactly the Third Amended Complaint will

look like in its final version, it would be appropriate to postpone any and all discovery so that the parties can have more clarity as to the remaining issues and remaining Defendants when conducting the discovery.  As such, any and all discovery should be postponed until at least after Third Amended Complaint is filed.

2.      Second reason for the discovery postponement is that the Defendants are intending to again bring their respective motions to dismiss for failure to state a claim immediately after Plaintiff files its Second Amended Complaint on November 13, 2020. Court should dispose of these motions first before any discovery is permitted.

3.      Third reason is that Plaintiff is expecting the birth of his child any day now. Due date was on October 28, 2020, but the baby has still not come out yet as of the filing of this motion. Plaintiff hereby requests this Honorable Court to at least postpone all discovery until the end of the calendar year 2020, which would be a 60-day postponement. Usually, this courtesy would be granted by the opposing counsels in every other case. However, sadly, not in this case. During these challenging times (covid pandemic), Plaintiff would like to spend time with his new-born child and the mother, and not have to deal with depositions or answering any discovery requests. First 30-60 days after birth is very crucial and risky and Plaintiff would like his attention focused solely on the mother and the child.  **See Petricevic Declaration**

4.      Last reason for postponement of any and all discovery is that Plaintiff is currently engaged in **global settlement discussions** with Defendants Nan, Inc. and Shin **that includes this federal lawsuit as well**. In fact, Honorable Judge Ashford, presiding

- 22 -

judge in Bosko Petricevic v. Nan, Inc., et al; Civil No. 1CCV-19-2008 (JHA) – related state lawsuit currently pending in the Circuit Court of the First Circuit, State of Hawaii between Plaintiff and Defendants Nan, Inc. and Shin, **has frozen all court proceedings, including any and all discovery**, pending completion of the court ordered mediation scheduled for February of 2021.

There is a reason why Judge Ashford has frozen all court proceedings, including any and all discovery in the State lawsuit which originates out of same set of facts as this Federal lawsuit does. Judge Ashford didn't want to complicate settlement efforts with parties incurring needless costs and fees by engaging in unnecessary discovery.

The fact of the matter is that Plaintiff and Defendants Shin and Nan, Inc. were very close to reaching a settlement agreement during the settlement conference with Judge Ashford that the Judge Ashford felt prudent enough to order a mediation and freeze any and all further court proceedings, including discovery. **Settlement will include this federal lawsuit as well.**

It is likely that after this mediation is completed that Defendants Shin and Nan, Inc. could be released from BOTH the state and federal lawsuits, therefore rendering their depositions and depositions of others and related discovery unnecessary. Judge Ashford's order regarding freezing discovery would be rendered hollow and meaningless if discovery was permitted in this case. It would be prudent, and in the interest of judicial efficiency and promoting settlement to honor the Judge Ashford's order and postpone discovery in this case until mediation is completed in February of 2021.

- 23 -

In that spirit, Plaintiff proposes that, after mediation is completed in February of 2021, all remaining parties meet and confer again and discuss the discovery issues and plan on how to proceed forward. Plaintiff proposes that this Court orders a Status Conference for sometimes in March of 2021 so that all the remaining parties can meet with this Honorable Court and make a plan for the discovery and all related issues. This would be the most efficient and prudent course of action since this lawsuit will be much clearer as to the remaining relevant issues after February 2021 mediation.

Until the final Defendants are determined, and final version of the Complaint is filed, it is simply of no use to allow discovery since it could very well turn out to be a waste of time and money. Waiting until February of 2021 is not going to unduly prejudice any parties, especially during the time of Covid-19 pandemic. There is also a good chance that there will be a lot more clarity regarding Covid-19 pandemic by February 2021 which could only make arranging depositions and other discovery easier.

Lastly, Defendants fail to demonstrate any real prejudice to their case if the discovery is simply delayed by 3-4 months. Obviously, Defendants will not even know the final version of the Second Amended Complaint until November 13, 2020 and even further, they themselves will slow this process down even further once they file their respective motions to dismiss for failure to state a claim.

The picture will be much clearer after the February of 2021 mediation.

C. **Attorney's Fees and Costs should be granted to Plaintiff for filing this Motion**

- 24 -

Pursuant to Rules 26 and 37 of the FRCP, and due to Defendants' bad faith conduct prior to the meet and confer conference requisite prior to filing of this motion, and various other misconduct as described above, this Court should grant Plaintiff its attorney's fees and costs for bringing this motion. If Defendants did not engage in bad faith conduct and other misconduct as described above, most of this motion, if not the entire motion, would have likely been unnecessary. As such, attorney's fees and costs are appropriate.

## IV.    CONCLUSION

Based on the above, Plaintiff is respectfully asking this Honorable Court to grant this instant motion in its entirety.


DATED:  Honolulu, Hawaii; November 2, 2020.


/s/ *BOSKO PETRICEVIC*
BOSKO PETRICEVIC
PRO-SE PLAINTIFF

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BOSKO PETRICEVIC, | CIVIL NO. CV 20-00283 JAO-WRP |
| Plaintiff, | |
| vs. | CERTIFICATE OF SERVICE |
| PATRICK SHIN; RICHARD WILSON; LAW OFFICE OF RICHARD E. WILSON; JOHN DWYER; TERRANCE REVERE; REVERE & ASSOCIATES LLLC; NAN INC., a domestic profit corporation, | |
| Defendants. | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **PLAINTIFF'S MOTION TO STAY DISCOVERY, APPOINT DISCOVERY MASTER AND REQUEST FOR ATTORNEY'S FEES AND COSTS** in the above-entitled action was duly served electronically through the Hawaii Judiciary CM/ECF and also via email, on November 2, 2020, on the following counsel of record and/or parties:

1.    Terrance Revere

    Revere & Associates LLLC
    Pali Palms Plaza
    970 North Kalaheo Ave., Suite A301
    Kailua, HI 96734
    808-791-9550
    terry@revereandassociates.com

ATTORNEY FOR DEFENDANTS

- 26 -

Richard Wilson
Law Office of Richard E. Wilson


2.    LAW OFFICES OF RICHARD E. WILSON, LLC
      RICHARD E. WILSON
      5614 735 Bishop St., Suite 306
      Honolulu, Hawaii 96813
      Tel. No. (808) 545-1311
      rewilson_law@yahoo.com

                  ATTORNEY FOR DEFENDANTS
                  Terrance Revere
                  Revere & Associates LLLC

3.    Richard M. Rand
      Marr Jones & Wang LLP
      Pauahi Twr.
      1003 Bishop St
      Ste. 1500
      Honolulu, HI 96813
      (808) 536-4900
      rrand@marrjones.com

                  ATTORNEYS FOR DEFENDANTS
                  Patrick Shin
                  NAN INC., a domestic profit corporation,



DATED: Honolulu, Hawaii; November 2, 2020.



                        /S/ *BOSKO PETRICEVIC*
                        BOSKO PETRICEVIC
                        PRO-SE PLAINTIFF


- 27 -