REVERE & ASSOCIATES, LLLC
TERRANCE M. REVERE          5857
PAUL V.K. SMITH            5891
Pali Palms Plaza
970 N. Kalaheo Ave., Suite A301
Kailua, Hawaii 96734
Tel. No. (808) 791-9550
Facsimile No. (808) 791-9551
*terry@revereandassociates.com*
*paul@revereandassociates.com*

Attorneys for Defendant
RICHARD WILSON; LAW OFFICE OF
RICHARD WILSON

Of Counsel:
LAW OFFICES OF RICHARD E. WILSON, LLC
RICHARD E. WILSON          5614
735 Bishop St., Suite 306
Honolulu, Hawaii 96813
Tel. No. (808) 545-1311
Facsimile No. (808) 545-1388
*rewilson_law@yahoo.com*

Attorney for Defendant
TERRANCE REVERE;
REVERE & ASSOCIATES, LLLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BOSKO PETRICEVIC, | CIVIL NO. 1:20-cv-00283 JAO-WRP |
| Plaintiff, | DEFENDANTS RICHARD WILSON, LAW OFFICE OF RICHARD WILSON, TERRANCE REVERE AND REVERE & ASSOCIATES, LLLC'S REPLY TO PLAINTIFF'S |
| vs. | |
| PATRICK SHIN; RICHARD WILSON; | |

| | |
|---|---|
| LAW OFFICE OF RICHARD E. WILSON; JOHN DWYER; TERRANCE REVERE; REVERE & ASSOCIATES LLLC; NAN INC., a domestic profit corporation,<br><br>                Defendants. | MEMORANDUM IN OPPOSITION TO ALL OF THE DEFENDANTS' RESPECTIVE MOTIONS TO COMPEL [ECF 106]; DECLARATION OF COUNSEL; EXHIBITS "1" – "2"; CERTIFICATE OF SERVICE<br><br>TRIAL<br>Date:       Not set<br>Judge:   Hon. Jill A. Otake |

**DEFENDANTS RICHARD WILSON, LAW OFFICE OF RICHARD WILSON, TERRANCE REVERE AND REVERE & ASSOCIATES, LLLC'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO ALL OF THE DEFENDANTS' RESPECTIVE MOTIONS TO COMPEL [ECF 106]**

## I.    <u>INTRODUCTION</u>

It goes without saying that Defendants Wilson and Revere are breathing easier knowing that Plaintiff – despite all evidence to the contrary – "is above [lobbing] personal attacks, [as] all [are] neither here nor there." Memorandum at footnote one.

The foregoing aside, Plaintiff's opposition to producing the settlement agreement is specious. Obviously, he is required to disclose his compromise negotiations with 'his-former-employer' defendants, the alleged co-conspirators with Wilson/Revere, as well as produce their settlement agreement. Since producing the agreement is so clearly required, and since Plaintiff once again eschewed resolving this matter via the efficient letter briefing process,

Wilson/Revere ask that he be required to pay the fees and costs incurred in bringing this motion, which would not have otherwise been incurred.  And should a second deposition be required; they request that he foot the bill.

## II.   CLAY CHAPMAN DOES NOT OPPOSE PRODUCING THE SETTLEMENT AGREEMENT

Plaintiff attempts to excuse his refusal to produce the settlement agreement because Wilson/Revere's co-conspirators at Clay Chapman (his most recent former employer/victim) "objected to the production of the [settlement] agreement and [settlement] agreement materials", having filed a perfunctory objection[1] to the Wilson/Revere subpoena.  So, according to the Plaintiff,

> [E]ven if [I] *wanted* to produce CC agreement, Clay Chapman also objected to the production of the CC agreement.  **Plaintiff producing the agreement would potentially place him in violation of the CC agreement**.  **As such, Plaintiff didn't obstruct a subpoena** from Defendant Nan to Clay Chapman which demanded that Clay Chapman produces the settlement agreement.

Italics, emphasis added.  Plaintiff is, again, being less than forthright.  If **he** were not objecting to producing the settlement agreement (notwithstanding that the parties have entered into a stipulated protective order [ECF 95], it would have been produced long ago.  This is not a "he said-she said dispute"; one need only follow the email trail.

---

[1] Obviously to allow Clay Chapman to redact confidential personal information, *e.g.*, SSNs, bank account numbers, and the like.

On the eve the long-delayed entry of the stipulated protective order, Clay Chapman (via Scott Batterman, Esq.) sent an email implying that Clay Chapman had no problem producing the settlement agreement.[2]

"So I understand, has it been agreed that the Settlement Agreement will be produced?"

Everyone, including the Plaintiff, interpreted Mr. Batterman's email as an acknowledgement that Clay Chapman had no objection to producing the settlement agreement. Plaintiff certainly got the message. Within a mere seven minutes, he penned an email to Clay Chapman directing it not to release the settlement agreement to Wilson/Revere.

As far as settlement agreement, the answer is NO!

There is no agreement to the production of settlement agreement short of Court Order for the already discussed reasons.[3]

Plaintiff, and Plaintiff alone, is the holdup.

## III. PLAINITIFFS ARGUMENTS ON THE MERITS ARE SIMPLY WRONG

### A. Plaintiff ignores and misrepresents cases in this District and the Ninth Circuit regarding the *discoverability* of settlement agreements and discussions.

This Court has ruled on this very issue of the discoverability of settlement agreements and settlement negotiations, concluding that they are discoverable.[4] In

---

[2] Exhibit "1" to the Wilson Declaration.
[3] Exhibit "2" to the Wilson Declaration.

*Gramercy Grp., Inc v. D.A. Builders,* LLC, 2017 U.S. Dist. LEXIS 185543, Judge

Chang, in holding that the defendant could not shield settlement discussions and a

related agreement from discovery, provided the following analysis of the

applicability of Fed.R.Evid. 408 on the discoverability, as opposed to admissibility,

of settlement agreements and compromise negotiations:

> Plaintiff also relies on FRE 408 to preclude the subject deposition questions.  In doing so, Plaintiff conflates relevance and admissibility. *FRE 408* states that evidence of "furnishing, promising, or offering-- or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim" or "conduct or a statement made during compromise negotiations about the claim" are "**not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed.R.Evid. 408(a)(emphases added).  "The prohibition on using compromise negotiations is therefore limited and the rule does not bar the admission of such negotiations for other permissible purposes**." *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 584 (N.D. Cal. 2008)*; *Fed. R. Evid. 408(b)* ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.").
>
> *FRE 408* is not, as Plaintiff claims, a privilege precluding the discovery of relevant information. **It does not protect settlement negotiations from discovery and "[o]n its face, the rule applies to the admissibility [\*10] of evidence at trial, not to whether evidence is discoverable."** *Phoenix Sols., 254 F.R.D. at 584*. Insofar as discovery rules do not affect the admissibility of evidence, *FRE 408* "does not require any special restriction on *Rule 26*." Id. (citation and quotation omitted).

---

[4] Whether or not such evidence would be admissible at trial is another matter for another day.

> The Motions are granted to the extent Defendants seek testimony about factual information or the deponents' knowledge related to the Proposed Amendment and/or the claims against dck/FWF. As explained above, *FRE 408* does not foreclose the discovery of settlement negotiations, and Plaintiff may not use it as a shield to preclude the examination of witnesses about the Proposed Amendment or other settlement negotiations. [Bold added.]

Bottom line: settlement agreements and compromise negotiations are discoverable.

Plaintiff misrepresents, or giving him the benefit of the doubt, misreads his next purported authority, *Whirlpool* v. CIT Group, 293 F.Supp.2d 1144 (D.Haw. 2003), a case decided by Judge Ezra.[5] Plaintiff claims Judge Ezra prevented the defendants in that case from obtaining the settlement agreement. Apparently, the Plaintiff failed to read the first sentence of Judge Erza's opinion, where he discussed the material monetary terms of the settlement between the parties.

> This case arises from the alleged bust-out and bankruptcy of MidPac Lumber Co., Ltd. Plaintiff Whirlpool Corporation ("Whirlpool") alleges Defendants ordered over $2.5 million in appliances with no intention of making payments. **In a settlement agreement**, Plaintiff Whirlpool released Defendants Edwin Bowling and Frances Haller-Bowling ("Bowlings") from all pending or future claims in connection with the allegations of fraud, fraud conspiracy, conversion, and any other claims asserted by Whirlpool, **in exchange for $ 150,000.**

---

[5] While some people prefer to skip to the last chapter of a suspense novel to find out who *dunnit*, Plaintiff apparently did not get the memo that this is generally not good practice when reading published opinions, especially those issued by this Court.

Emphasis added.  Obviously, the settlement agreement had been produced, and the parties were aware of the consideration exchanged for the release.

Moreover, in the very next paragraph, Judge Erza noted that the plaintiff in *Whirlpool*, unlike the Plaintiff in this case, actually bothered to comply with Hawaii's good faith settlement law.  Here, Plaintiff's decision to ignore the law provides another reason for requiring him to produce the agreement, which may not have been entered into in good faith by the Plaintiff and may have ither consequences that impact this case.[6]

### B. Plaintiff ignores *Montalvo* and the reality that Plaintiffs are entitled to one recovery, not multiple recoveries.

Plaintiff's former employers and other lawyers are the targets in this case and his sundry state court actions.  While the list of his alleged tormentors is diverse, his stock-in-trade claim in all cases is that each defendant completely ruined his life, which alone caused him all of his severe emotional distress.

A plaintiff is, of course, entitled to only **one** recovery for his claimed harm, and a defendant is only responsible for the harm he or she actually causes. Accordingly, since the Plaintiff has alleged that different defendants, in various incidents, over a period spanning years have caused him injury, his damages must be fairy apportioned amongst these events and actors.  *Montalvo v. Lapez* 77

---

[6]  Wilson/Revere cast no aspersions on the Clay Chapman Defendants.  They were the parties apparently hustled by the Plaintiff.

Hawaii 282, 300 (1994). And it goes without saying that since Wilson/Revere are only the most recent alleged awful, rotten, and mean bad guys, there ought to be a lot of apportionment.

With respect to Wilson/Revere's supposed co-conspirators at Clay Chapman, Plaintiffs alleged they engaged in tortious conduct which supposedly caused him severe emotional distress and the loss of his employment. [7] Wilson/Revere are entitled to know what, if any, tribute was paid to Plaintiff by their supposed co-conspirators, as they would be entitled to an offset, and what discussions were had underlying the settlement in order to apportion the harm. *See*, *Aga v. Hundahl,* 78 Hawaii 230 (1995)(UCATA intended to allow a plaintiff to settle with one defendant and retain her claim against any other joint tortfeasors and merely **reducing the ultimate recovery** by the amount paid by settling tortfeasor). Plaintiff does not get to play hide-the-ball with the non-settling Defendants.

Defendants' need and entitlement to the documents at issue are quite obvious. Indeed, if he settled for a $5,000.00 payment from Clay Chapman, that would certainly impact the veracity of his $3 million damages claim. Whether the settlement would be admissible at trial is another matter, but it goes without saying

---

[7] Plaintiff contends that his pecuniary losses from his "wrongful" termination were $3 million dollars.

that disclosure of the amount is discoverable.  Yet, Plaintiff in bad faith refuses to relent and show his hand.

### C.     Plaintiff also ignores the impact of his constant amendments on the status of this case.

Plaintiff argues that the remaining Defendants have not asserted claims for indemnity and/or contribution against the Clay Chapman defendants as another excuse for refusing to produce the settlement agreement.  That might have a little to do with the fact that Plaintiff can't seem to stick with a complaint long enough to require an answer.  Six months in, and this case remains in flux—Plaintiff filed a defective second amended complaint and is presently seeking leave to file a third amended complaint.  There is currently no complaint that needs to be responded to, and, as this Court knows, the answer is where most defendants generally like to assert defenses.

### D.     Plaintiff ignores the Hawaii Rules of Evidence.

Plaintiff has asserted a state court claim for tortious interference with prospective economic advantage against the remaining defendants, including Wilson/Revere.  To the extent that the Hawaii Rules of Evidence (see FRE 501) apply (see FRE 501), there is no settlement discussion privilege recognized in Hawaii.  Even if one were to hypothetically exist, Haw.R.Evid. 511 provides as follows:

**Waiver of privilege by voluntary disclosure.** A person upon whom these rules confer a privilege against disclosure waives the privilege if, while holder of the privilege, the person or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is a privileged communication.

In his very skimpy response to the request for production, Plaintiff has already provided emails regarding his negotiations with Clay Chapman.[8] Once Plaintiff opened the door, it remained open—he waived the ersatz "privilege." Haw.R.Evid. 511's commentary provides as follows:

This rule closely resembles Uniform Rule of Evidence 510. The sole justification for any rule of privilege is protection of a personal right of confidentiality that is recognized to be of greater societal importance than the principle of free disclosure of all relevant evidence in a judicial proceeding. **Any intentional disclosure by the holder of the privilege defeats this purpose and eliminates the necessity for the privilege in that instance. Consistent with this, waiver of privilege is generally absolute. Once confidentiality has been destroyed by intentional disclosure, the holder of the privilege may not reinvoke it, and the evidence is as admissible as if no privilege had initially existed**.

Emphasis added. Producing and filing confidential documents in an unsealed pleading is an intentional disclosure.

Plaintiff also argues that the defendants seek the settlement documents in order to discover his theories of the case. No, that's not true. Wilson/Revere are

---

[8] Plaintiff insisted upon a Stipulated Protective Order ("SPO), yet when it suited him, he ignored it and filed documents marked confidential in unsealed pleadings.

well aware of his theories (despite the absence of a functioning complaint); they want the documents in order to debunk what are, in fact, spurious claims.

On page 13 of his memo Plaintiff cites to California cases for a supposed "well-established privilege" protecting settlement discussions and settlement agreements. Ignoring the irrelevant and incorrect discussion of Plaintiff's spin on California law, the problem he has *is we are in the United States District Court for the District of Hawaii*. California is about 2,500 miles due east. Again, Hawaii law does not recognize a settlement agreement or settlement discussion privilege.

Moreover, Haw.R.Evid. 408 is a rule of **admissibility**, not privilege. Haw.R.Evid. 408 contains exceptions for issues like bias.[9] This rule does **not** require the exclusion of any evidence otherwise discoverable, merely because it is presented in the course of compromise negotiations or mediation proceedings. This is especially important here.

---

[9] Plaintiff argues that the settlement agreement has no impact on his credibility or the credibility, bias, interest, and motive of other witnesses. To put it mildly, the defendants don't (and shouldn't have to) accept his word for it. On the matter of bias and lack of credibility, Plaintiff blames Clay Chapman for his damages in a demand letter and threatens them with his secret recordings. Once they settle, all of a sudden, the recordings have mysteriously disappeared. Now it's all about blaming the remaining defendants, not Clay Chapman. Plaintiff also claims that the documents are not relevant because he says he was fired, yet in the same demand his insists that he be allowed to resign. Not relevant? Hardly.

The evidence Plaintiff is trying to hide is highly relevant.  Settlement of normal disputes one thing.  None of the cases [10] cited by Plaintiff deal with a lawyer/plaintiff serially suing employers and opposing counsel.  The fact of the matter is that we have a Plaintiff who routinely sues employers, lawyers, and law firms claiming that each one ruined his life.  Defendants ought to be allowed to let the jury decide whether Plaintiffs is a serial claimant who brings frivolous claims to extort payments (like the one he just received from Clay Chapman), or he is just really unlucky.

Plaintiff also claims that the documents are irrelevant because they just involve "posturing."  Plaintiff's mast is his mast; he can fly any flag he wants.  However, Wilson/Revere should be allowed to counter his "posturing argument" by showing that he threatened the Clay Chapman with secret recordings of their supposed misconduct to extract a payment, and then—settlement check in hand—the recordings mysteriously disappeared.

### E.    Plaintiff is simply wrong about Hawaii law regarding intentional tortfeasors, the impact of his own fault, etc.

In *Ozaki v Discovery Bay*, 87 Hawaii 265 (1998) The Court held that

> [i]n light of the fact that the circuit court correctly entered final judgment in favor of Discovery Bay and against the plaintiffs pursuant to the jury's special verdict, it follows tautologically

---

[10] "We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit."  Citation unknown.

that Discovery Bay and Sataraka are not "joint tortfeasors" within the meaning of HRS § 663-11, *see supra* note 4, because Discovery Bay and Sataraka cannot be "jointly or severally liable" to the plaintiffs for the injuries arising out of Dennis's death. The definition of "joint tortfeasors" set forth in HRS § 663-11 "is based on liability." **In this connection, "the *basis* of liability is not relevant, nor is the relationship among those liable for the tort. . . . The point is that both [tortfeasors] are (at least) 'severally' *liable* for the same injury to the plaintiff."** *Id.* And a tortfeasor, such as Discovery Bay, cannot be jointly and/or severally liable with another unless "the person who has been harmed can sue *and recover* from both …." *Black's Law Dictionary* 914 (6th ed. 1990) (emphasis added); *see id.* at 915 (defining "liable" in relevant part to mean "compellable to make . . . compensation" and "accountable for or chargeable with").

Had the jury, for example, apportioned ninety-two percent of the total fault to the intentional conduct of Sataraka, five percent to the negligent conduct of Discovery Bay, and three percent to the negligent conduct of Dennis, the result would be quite different.  Under those circumstances, HRS § 663-31(a) would not bar the plaintiffs from recovering against Discovery Bay because Dennis's negligence would not have been "greater than the negligence of the person or[,] in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought . . . ." *See supra* note 1. **Thus, Sataraka and Discovery Bay would be "joint tortfeasors" within the meaning of HRS § 663-11, and Discovery Bay would be liable for its *pro rata* share of the plaintiffs' economic damages pursuant** to HRS § § 663-10.9(1) and (3).

Some citations omitted.  Thus, again, the settlement related materials are highly relevant to apportioning responsibility between Clay Chapman, its attorneys, Plaintiff, and the remaining defendants, including Wilson/Revere.  As *Ozaki* makes clear, if a Plaintiffs own negligent or intentional acts (*e.g.*, not showing up to

13

multiple court hearings or meetings, as is set forth in his termination letter that he filed in open court after demanding that it be kept secret) were more of the cause of his termination than the supposed acts of the remaining defendants, then Plaintiff may be as out of luck as the Plaintiff was in *Ozaki*.

Plaintiff also inexplicably relies upon *Garner v Ranka*, 2020 US Dist LEXIS 601898 (2020). The case is based on New Mexico law and entirely different facts. There was no allocation of joint and several liability in that matter because the defense didn't preserve the argument, and the case went to trial solely on comparative fault. Here the remaining defendants are being accused of conspiring with the settling parties, and intend to assert all defenses available to them once they have a complaint they can actually respond to and critical facts like the settlement document at issue.

## IV.   CONCLUSION

Plaintiff's position is beyond frivolous; it is deliberately misleading. The motion should be granted, and Defendants should be awarded their fees and costs.

DATED:  Kailua, Hawaii, December 20, 2020.

/s/ Terrance M. Revere
TERRANCE M. REVERE
PAUL V.K. SMITH
Attorneys for Defendants
RICHARD WILSON; LAW OFFICE
OF RICHARD WILSON

/s/ Richard E Wilson
RICHARD E. WILSON
Attorney for Defendants
TERRANCE REVERE; REVERE &
ASSOCIATES, LLLC