UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| BOSKO PETRICEVIC,<br><br>          Plaintiff,<br><br>   vs.<br><br>PATRICK SHIN, RICHARD WILSON,<br>JOHN DWYER, TERRANCE REVERE,<br>NAN, INC., A DOMESTIC PROFIT<br>CORPORATION,<br><br>          Defendants. | CIV. NO. 20-00283 LEK-WRP |

**ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT**

On February 18, 2021, Defendants Richard Wilson
("Wilson") and Terrance Revere ("Revere" and collectively
"Motion Defendants") filed their Motion to Dismiss Third Amended
Complaint [ECF 151] ("Motion"). [Dkt. no. 162.] Pro se
Plaintiff Bosko Petricevic ("Plaintiff") filed his memorandum in
opposition on March 26, 2021, and the Motion Defendants filed
their reply on April 1, 2021. [Dkt. nos. 188, 192.] The Court
finds this matter suitable for disposition without a hearing
pursuant to Rule LR7.1(c) of the Local Rules of Practice for the
United States District Court for the District of Hawaii ("Local
Rules"). The Motion is hereby granted as to Counts I and II
because attorneys cannot conspire in this context with clients,

and as to Count III and V because of the absolute litigation privilege.

**BACKGROUND**

According to the Third Amended Complaint, Plaintiff is an attorney licensed in the State of Hawai`i. [Third Amended Complaint, filed 2/5/21 (dkt. no. 151), at ¶ 1.] On March 18, 2019, Plaintiff was hired by Defendant Nan, Inc. ("Nan"), a construction company owned by Defendant Patrick Shin ("Shin"), as in-house litigation counsel. [Id. at ¶¶ 2, 5, 17.] Between April and June of 2019, Plaintiff expressed his opinion to Shin that some of their practices were illegal. [Id. at ¶ 41.] Consequently, Shin insulted and threatened to fire Plaintiff. [Id. at ¶ 42.] Plaintiff complained about this conduct, as well as the underlying conduct that Plaintiff had originally complained about to Shin, to other executive officers at Nan. [Id. at ¶ 55.] Shortly before he was terminated on June 10, 2019, Plaintiff sent an email to Nan executive officer Wyeth Matsubara complaining Nan was a hostile work environment. See id. at ¶¶ 64-65.

On September 3, 2019, Plaintiff began working for the law firm Clay Chapman Iwamura Pulice & Nervell. [Id. at ¶ 67.] On September 13, 2019, Plaintiff filed a complaint for discrimination and retaliation against Shin and Nan with the United States Equal Employment Opportunity Commission ("EEOC").

2

[Id. at ¶ 68.]  In approximately October 2019, Gerald Clay,
Esq., a partner at Clay Chapman Iwamura Pulice & Nervell,
unconditionally promised Plaintiff an equity partnership with
the law firm, provided his employment with the firm continued.
[Id. at ¶ 69.]  On October 23, 2019, Plaintiff filed a complaint
in state court against Nan and Shin for, among other claims,
wrongful termination.  [Id. at ¶ 70.]  Wilson represents Nan and
Shin in the state court case.  [Id. at ¶ 72.]

On November 1, 2019, Shin called Gerald Clay, and left
a voicemail requesting a call back.  [Id. at ¶¶ 74-75.]
Plaintiff alleges Shin had no reason to call Gerald Clay other
than to pressure him and the law firm to terminate Plaintiff's
employment and thus jeopardize his future partnership if
Plaintiff did not drop his state court case and his EEOC case.
[Id. at ¶ 77.]  On a later but unspecified date, Wilson admitted
to Plaintiff in a face-to-face meeting: he had engaged in a
conspiracy with his clients Nan and Shin to force Plaintiff to
drop his state court case and his EEOC case; and, if Plaintiff
failed to drop the cases, he would once again instruct Shin and
Nan to call Plaintiff's employer to "threaten his employment
again and try to get him fired again."  [Id. at ¶ 79.]  Wilson
also made insulting remarks about Plaintiff's ethnicity and
language skills.  [Id.]  Gerald Clay subsequently told Plaintiff
"Shin and Wilson are people of influence and power and that they

can and will take his job away if Plaintiff doesn't drop his legal actions against [Nan] and Shin." [Id. at ¶ 80.] Gerald Clay also told Plaintiff "his future promised partnership could be in danger if he doesn't drop the lawsuit and EEOC complaint against . . . [Nan] and Shin." [Id. at ¶ 84.]

A few weeks later, Defendant John Dwyer ("Dwyer"), an attorney and friend of Gerald Clay, approached Gerald Clay at a social event on behalf of, and in conspiracy with, Shin, Nan, and Wilson, and asked "if there is anything he could do to make this state lawsuit and EEOC complaint against Defendants Shin and [Nan] . . . go away." [Id. at ¶¶ 87-88.] Gerald Clay later repeated his warning to Plaintiff that "his partnership and his employment could be taken away unless he drops the State of Hawaii Complaint and the EEOC charge." [Id. at ¶ 92.]

On approximately May 8, 2020, Plaintiff emailed Wilson that he would be filing a federal suit against Wilson, Shin, Nan, and Dwyer for violation of his civil rights. [Id. at ¶ 94.] Plaintiff alleges a few days later, Wilson, Shin, Nan, and Defendant Terence Revere ("Revere") "conspired to deter, harass, intimidate, threaten and interfere with Plaintiff's employment as [a] result of his intention to file his federal civil rights lawsuit . . . and as a result of having already filed his State of Hawaii lawsuit and EEOC action." [Id. at ¶¶ 4, 95.] The Motion Defendants next contacted their friend

4

Carlos Perez-Mesa, Esq., a partner at Clay Chapman Iwamura Pulice & Nervell, complaining about Plaintiff, and made false accusations against him. Carlos Perez-Mesa, along with Gerald Clay, warned Plaintiff that he was likely to be fired if he did not drop his state court case and EEOC complaint. [Id. at ¶¶ 96-97, 101-02.] On July 30, 2020, Plaintiff was terminated from Clay Chapman Iwamura Pulice & Nervell. [Id. at ¶ 122.]

Plaintiff alleges the following causes of action: 1) violation of 42 U.S.C. § 1985(2), part two, against Shin, Nan, and Wilson ("Count I"); [id. at ¶¶ 129-36;] 2) violation of § 1985(2), part one, against Revere and Wilson ("Count II"); [id. at ¶¶ 137-53;] 3) tortious interference with contractual relations against Shin, Wilson, Revere, Nan, and Dwyer ("Count III"); [id. at ¶¶ 154-58;] 4) violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, against Nan ("Count IV"); [id. at ¶¶ 159-67;] and 5) tortious interference with prospective economic and business advantage against Shin, Wilson, Revere, Nan, and Dwyer ("Count V"), [id. at ¶¶ 168-72]. The relief Plaintiff seeks includes: special, economic, consequential, general, and punitive damages; attorneys' fees and costs; and such other relief as deemed just and proper by this Court. [Id. at pg. 37.]

In the Motion, the Motion Defendants argue that the allegations in the Third Amended Complaint regarding the alleged face-to-face interaction between Plaintiff and Wilson should be stricken for lack of specificity.  They also argue that, as lawyers, it is not possible for them to conspire with their clients for purposes of § 1985.  Additionally, Hawaii's absolute litigation privilege precludes Counts I, II, III, and V. Finally, the Motion Defendants argue Plaintiff failed to properly allege the elements of Counts III and V.

## STANDARD

The Ninth Circuit has described the standard applicable to a motion under Fed. R. Civ. P. 12(b)(6) as follows:

> To survive a motion to dismiss for failure to state a claim after the Supreme Court's decisions in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the [plaintiff's] factual allegations "must . . . suggest that the claim has at least a plausible chance of success."  In re Century Aluminum [Co. Sec. Litig.], 729 F.3d [1104,] 1107 [(9th Cir. 2013)].  In other words, their complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. 1937).
>
> Following Iqbal and Twombly, . . . we have settled on a two-step process for evaluating pleadings:

First, to be entitled to the presumption of
truth, allegations in a complaint or
counterclaim may not simply recite the
elements of a cause of action, but must
contain sufficient allegations of underlying
facts to give fair notice and to enable the
opposing party to defend itself effectively.
Second, the factual allegations that are
taken as true must plausibly suggest an
entitlement to relief, such that it is not
unfair to require the opposing party to be
subjected to the expense of discovery and
continued litigation.

[Eclectic Props. E., LLC v. Marcus & Millichap
Co., 751 F.3d 990, 996 (9th Cir. 2014)] (quoting
Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.
2011)).  In all cases, evaluating a complaint's
plausibility is a "context-specific" endeavor
that requires courts to "draw on . . . judicial
experience and common sense."  Id. at 995-96
(internal quotation marks omitted).

Levitt v. Yelp! Inc., 765 F.3d 1123, 1134-35 (9th Cir. 2014)

(some alterations in Levitt).

　　　This Court is not required to accept as true

"[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements."  Iqbal, 556 U.S. at

678 (citing Twombly, 550 U.S. at 555, 127 S. Ct. 1955)).  Also,

this district court has stated, "although allegations 'upon

information and belief' may state a claim after Iqbal and

Twombly, a claim must still be based on factual content that

makes liability plausible, and not be 'formulaic recitations of

the elements of a cause of action.'"  Klohs v. Wells Fargo Bank,

N.A., 901 F. Supp. 2d 1253, 1259 n.2 (D. Hawai`i 2012) (quoting

Long v. Yomes, 2011 WL 4412847, at *4 (D. Hawai`i Sept. 20, 2011) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955) (editorial mark omitted)).

**DISCUSSION**

Although Plaintiff is pro se, he is an attorney, and specifically, an experienced litigator. See Third Amended Complaint at ¶ 16. Therefore, he is not entitled to the liberal construction of his filings usually extended to pro se litigants. See Bassett v. Haw. Disability Rts. Ctr., CIV. NO. 18-00475 JMS-KJM, 2020 WL 7351113, at *7 (D. Hawai`i Nov. 20, 2020) (collecting cases), *reconsideration denied*, 2020 WL 7379074 (Dec. 15, 2020). However, even if the Court were to liberally construe Plaintiff's filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), the result would not change.

**I.    Section 1985(2) Conspiracy**

Section 1985(2), states:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his

8

being or having been such juror; or if two or
more persons conspire for the purpose of
impeding, hindering, obstructing, or defeating,
in any manner, the due course of justice in any
State or Territory, with intent to deny to any
citizen the equal protection of the laws, or to
injure him or his property for lawfully
enforcing, or attempting to enforce, the right of
any person, or class of persons, to the equal
protection of the laws[.]

Plaintiff alleges the Motion Defendants conspired with

Shin and Nan to intimidate Plaintiff by threatening his

employment at Clay Chapman Iwamura Pulice & Nervell in order to

force him to drop his state court case and EEOC complaint.  The

Motion Defendants argue that Nan and Shin are Wilson's clients,

Wilson is a client of Revere, and it is not possible for an

attorney to conspire with his client(s) for the purposes of

§ 1985(2) because the attorney is acting on behalf of his

client, and not for his own benefit.  Thus, the Motion

Defendants argue Plaintiff has failed to state a § 1985(2) claim

because the application of an attorney-client variant of the

intracorporate conspiracy doctrine precludes his civil

conspiracy claims as to Wilson and Revere.  See Fed. R. Civ.

P. 12(b)(6) (stating "a party may assert the following defenses

by motion: . . . (6) failure to state a claim upon which relief

can be granted").  "Ordinarily, affirmative defenses . . . may

not be raised on a motion to dismiss."  Lusnak v. Bank of Am.,

N.A., 883 F.3d 1185, 1194 n.6 (9th Cir. 2018).  "Nevertheless,

9

we can consider an affirmative defense on a motion to dismiss when there is 'some obvious bar to securing relief on the face of the complaint.'" U.S. Commodity Futures Trading Comm'n v. Monex Credit Co., 931 F.3d 966, 973 (9th Cir. 2019) (citation and internal quotation marks omitted), *cert. denied* , 141 S. Ct. 158 (2020). Thus, the Court will consider the intracorporate conspiracy doctrine and the absolute litigation privilege to the extent the underlying facts are alleged in the Third Amended Complaint.

Initially arising in the antitrust context, the intracorporate conspiracy doctrine states that a single corporate entity cannot be liable for conspiracy because "[t]he officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals." See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984).

Plaintiff presents two arguments as to why the intracorporate conspiracy doctrine should not apply to the Motion Defendants. First, he argues that the intracorporate conspiracy doctrine should not apply because his case concerns his civil rights. [Mem. in Opp. at 18-21.] Second, he argues that, with respect to Counts II, III, and V, the intracorporate conspiracy doctrine should not apply because those counts are

10

alleged against the Motion Defendants in their individual
capacities for actions they took on their own behalf related to
the instant federal litigation, rather than in the scope of
their representation of Shin and Nan related to the state court
case.  [Id. at 21.]  As the Ninth Circuit has not definitively
ruled on the issue of whether the intracorporate conspiracy
doctrine applies in civil rights cases, the Court turns to other
persuasive authority.

The Third Circuit examined the issue of the
intracorporate conspiracy doctrine in the context of attorney-
client relationships in Heffernan v. Hunter, 189 F.3d 405 (3d
Cir. 1999).  The plaintiff ("Heffernan") had investigated one of
the defendants ("Hunter") while working for the Securities and
Exchange Commission ("SEC").  During the course of the
investigation, the proceedings became increasingly contentious
when Heffernan married Hunter's ex-girlfriend, who had
previously accused Hunter of molesting her eleven-year-old
daughter.  Heffernan recused himself from the investigation
prior to the marriage.  Hunter, through an attorney, filed a
frivolous suit against Heffernan, with accompanying media
publicity, in an effort to discredit Heffernan's anticipated
testimony in the SEC case.  Heffernan sued Hunter, his lawyer
and the lawyer's law firm under § 1985(1) and (2), among other
claims and parties, asserting that Hunter and his lawyer had

conspired to prevent Heffernan from testifying.  The district
court dismissed his § 1985(1) claim on the basis that there
could be no conspiracy between attorney and client under the
circumstances.  Heffernan, 189 F.3d at 407-08.

The Third Circuit, relying in part on Doherty v.
American Motors Corp., 728 F.2d 334 (6th Cir. 1984), and Travis
v. Gary Community Mental Health Center, Inc., 921 F.2d 108 (7th
Cir. 1990), affirmed the district court's conclusion that,
similar to the intracorporate conspiracy doctrine, where the
attorney's efforts are for the benefit of the client rather than
the attorney personally, there can be no conspiracy.  Heffernan,
189 F.3d at 411-12.  The Third Circuit explained the
distinguishing characteristics of the attorney-client
relationship from the general intracorporate conspiracy
doctrine, noting that while

> the case law on intracorporate conspiracies
> provides a convenient analogy for the attorney-
> client situation, there are important differences
> between the agency relationships involved in
> private corporate activities and those arising in
> the practice of law.  The right of a litigant to
> independent and zealous counsel is at the heart
> of our adversary system and, indeed, invokes
> constitutional concerns.  Counsels' conduct
> within the scope of representation is regulated
> and enforced by disciplinary bodies established
> by the courts.  Abuses in litigation are
> punishable by sanctions administered by the
> courts in which the litigation occurs.
>
> This regulatory framework provides third
> parties with protection that is lacking in the

corporate field.  Despite the absence of such
safeguards in the business setting, most courts
nevertheless apply the intracorporate conspiracy
ban.  That being so, it follows all the more that
we should enforce the ban on conspiracies in the
attorney-client context where even more
compelling policy concerns exist.

It is, of course, axiomatic that if the
challenged conduct occurs outside the scope of
representation, no reason for immunity exists and
the attorney and the client, as individuals,
could form a conspiracy.  See Johnson [v. Hills &
Dales Gen. Hosp.], 40 F.3d [837,] 840-41 [6th
Cir. 1994)]; Doherty, 728 F.2d at 339-40.
However, the mere fact that attorneys have "mixed
motives," such as "enhancing" their reputation by
aggressive representation, does not remove their
conduct from the scope of the agency.  See Los
Angeles Airways, Inc. v. Davis, 687 F.2d 321, 328
(9th Cir. 1982).

The challenged activity may violate the
canons of ethics, but so long as it is within the
scope of representation, it does not eliminate
the exemption from a conspiracy charge under
section 1985.  "[S]imply because a lawyer's
conduct may violate the rules of ethics does not
mean that the conduct is actionable, in damages
or for injunctive relief."  Maritrans GP, Inc. v.
Pepper, Hamilton & Scheetz, 529 Pa. 241, 602 A.2d
1277, 1284 (1992).  The offended third party has
a remedy under state law through court imposed
sanctions or reference to state disciplinary
bodies.

Id. at 413 (some alterations in Heffernan) (footnote omitted).

Therefore, although the Third Circuit disapproved of Hunter's

attorney's conduct as alleged, it ruled that because the

attorney and his firm were acting within the scope of their

representation of Hunter, the district court had correctly found

that Heffernan had failed to state a conspiracy claim.  See id.
at 413-14.

In the Ninth Circuit, some district courts have also
ruled that the intracorporate conspiracy doctrine is applicable
in § 1985 cases.  See Hoefer v. Fluor Daniel, Inc., 92 F. Supp.
2d 1055, 1059 (C.D. Cal. 2000) (ruling that the intracorporate
conspiracy doctrine applies to a § 1985 conspiracy allegation);
Schmitz v. Mars, Inc., 261 F. Supp. 2d 1226, 1235 (D. Or. 2003)
(explaining that the intracorporate conspiracy doctrine applied
to claims of an alleged § 1985(2) conspiracy based on the
conduct of employees acting within the scope of their
employment).  Although neither case deals directly with alleged
attorney-client conspiracies, they are persuasive for the
general proposition that the intracorporate conspiracy doctrine
is applicable to claims arising under § 1985.  Also, the
district court in Hoefer recognized the disagreement among
district courts in the Ninth Circuit as to the applicability of
the intracorporate conspiracy doctrine to civil rights cases.
Hoefer, 92 F. Supp. 2d at 1058 (citing Washington v. Duty Free
Shoppers, 696 F. Supp. 1323, 1326 (N.D. Cal. 1988); Rebel Van
Lines v. City of Compton, 663 F. Supp. 786, 792 (C.D. Cal.
1987)).  But, the district court found that such application was
sound, "should not depend on the perceived importance of the
issue or public policy involved[,] . . . [and] would not apply

if the actionable conduct is outside the scope of employment."
See id. at 1059.  The district court ruled that, at least under
those circumstances, the intracorporate conspiracy doctrine
applied to the plaintiff's § 1985 claims.  See id..

Courts have also considered the issue in the context
of public entities.  In Rabkin v. Dean, the plaintiff, a city
employee, sued the city and its council members under § 1985(3)
alleging a civil conspiracy after the city council did not
approve raises to her salary.  856 F. Supp. 543, 546 (N.D. Cal.
1994).  The district court explained that it found

> persuasive the rationale supporting application
> of the intra-corporate conspiracy doctrine to bar
> a Section 1985 claim where the conspiratorial
> conduct challenged is essentially a single act by
> a single governmental body acting exclusively
> through its own officers, each acting within the
> scope of his or her official capacity.  The
> intra-corporate conspiracy doctrine was first
> developed to preclude a corporation from being
> charged with conspiracy to violate the anti-trust
> laws "when it exercises its rights through its
> officers and agents, which is the only medium
> through which it can possibly act."  Nelson Radio
> & Supply Co. v. Motorola, 200 F.2d 911, 914 (5th
> Cir. 1952), *cert. denied*, 345 U.S. 925, 73 S. Ct.
> 783, 97 L. Ed. 1356 (1953).  Similarly, it defies
> common sense to render the same conduct for which
> a government entity is held liable, i.e., the
> official votes of individual councilmembers, as
> separate acts accomplished by separate
> conspiratorial actors other than the government
> entity.  See Runs After [v. United States], 766
> F.2d [347,] 354 [(8th Cir. 1985)]; Herrmann v.
> Moore, 576 F.2d 453, 459 (2d Cir.), *cert. denied*,
> 439 U.S. 1003, 99 S. Ct. 613, 58 L. Ed. 2d 679
> (1978); cf. Stathos [v. Bowden], 728 F.2d [15,]
> 21 [(1st Cir. 1984)] (intra-corporate conspiracy

doctrine rejected on grounds that defendants'
conduct involved a series of acts over time).

Id. at 551–52.

The allegations in the Third Amended Complaint
regarding the Motion Defendants generally describe attorneys
acting in zealous advocacy of his client, not for his own
benefit, suggesting the application of the intracorporate
conspiracy doctrine is warranted.  See, e.g., Third Amended
Complaint at ¶ 79.  Undoubtedly, the application of the
intracorporate conspiracy doctrine to § 1985 cases involving
civil rights is complex, and serious policy and factual
considerations must be taken into account.  See e.g., Webb v.
Cnty. of El Dorado, No. 2:15-cv-01189-KJM-EFB, 2016 WL 4001922,
at *8 (E.D. Cal. July 25, 2016) (holding that the intracorporate
conspiracy doctrine did not apply where the defendants did not
execute a unified decision, or corporate action, but rather a
series of individual actions).  Consequently, some courts have
expressed doubt as to the applicability of the intracorporate
conspiracy to cases involving allegations of civil rights
violations.  See Stathos, 728 F.2d at 20-21 (doubting the
applicability of the intracorporate conspiracy doctrine to a
case with equal protection violations at issue, but holding that
the intracorporate conspiracy doctrine did not apply under the
facts of that case because the defendants' activities went

beyond a "single act" and instead involved a series of acts by multiple actors over time).  However, the district court in Hoefer persuasively explained the basis for the doctrine with reference to the core essence of a conspiracy:

> The logic for the doctrine comes directly from the definition of a conspiracy.  A conspiracy requires a meeting of minds.  See Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983).  "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."  Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S. Ct. 783, 97 L. Ed. 1356 (1953).

92. F. Supp. 2d at 1057.  Thus, a conspiracy, by its nature, requires each person involved to be involved for their own benefit, and not as an agent of the other.  See Heffernan, 189 F.3d at 412 (noting an exception to the intracorporate conspiracy doctrine exists where "the employees have acted for their sole personal benefit and thus outside the course and scope of their employment").  In light of the purpose of exempting intracorporate or agency-style decisions from conspiracy liability, the existence of a conspiracy cannot be determined by the nature of the underlying claim, but only by the actors, their relationships, and their conduct.  Therefore, Plaintiff's first argument is rejected.

With respect to Plaintiff's argument that the Motion
Defendants conspired because he named them as defendants
individually in the instant case, the Third Amended Complaint
does not contain any plausible allegations that the Motion
Defendants were acting for their own benefit.  See In re Century
Aluminum Co. Sec. Litig., 729 F.3d 1104, 1107 (9th Cir. 2013)
(noting that, to survive a motion to dismiss, factual
allegations "must . . . suggest that the claim has at least a
plausible chance of success").  Plaintiff's tactical decision to
name his state court opponents' counsel in a contemporaneous
federal suit for conduct they engaged in during the course and
scope of their representation of Shin and Nan does not change
their attorney-client relationship, nor does it make their
conduct solely self-serving.  Although disposal of the federal
case would benefit Wilson and Revere, the catalyst for their
entire course of conduct was their representation of Shin and
Nan (and, in the case of Revere, Wilson).  Thus, Plaintiff has
failed to plausibly allege that a "meeting of the minds"
occurred where Wilson and/or Revere agreed or decided to act
outside their scope of representation.  See Baker v. Stuart
Broad. Co., 505 F.2d 181, 183 (8th Cir. 1974) (holding that,
"[i]f the challenged conduct is essentially a single act of
discrimination by a single business entity, the fact that two or
more agents participated in the decision or in the act itself

will normally not constitute the conspiracy contemplated by
[§ 1985]").  It cannot be the case that Plaintiff can dictate
the scope of Wilson's representation of Shin and Nan, and
Revere's representation of Wilson and/or Shin and Nan.

Furthermore, the system of ethical safeguards already
in place is specifically designed to address allegedly unethical
behavior by attorneys in their representation of clients, and
exposing said attorneys to liability as civil conspirators for
an aggressive defense (that remains within the scope of
representation) is antithetical to the policy of allowing for
zealous advocacy.  Hence, an attorney's motivation to protect
him or herself at the cost of providing less effective or
vigorous representation to a client is in direct contrast with
the established public interest in protecting "[t]he right of a
litigant to independent and zealous counsel[, a right which] is
at the heart of our adversary system."  See Heffernan, 189 F.3d
at 413.  Under the facts as alleged, it is not possible for the
Motion Defendants, as attorneys, to have conspired with their
clients for purposes of § 1985(2), because their alleged conduct
occurred within the scope of representing their clients.
Therefore, Plaintiff has failed to plead facts that would
support a finding that the Motion Defendants were involved in a
conspiracy.

For these reasons, Plaintiff has failed to state a
claim against Wilson and Revere for violation of § 1985(2).
Thus, the Motion is granted with respect to Count I as to
Wilson, and Count II as to Wilson and Revere.

## II.  **Tortious Interference with Contractual Relations**

"[F]ederal courts exercising diversity jurisdiction
must follow state substantive law . . . when adjudicating state
law claims." Sonner v. Premier Nutrition Corp., 971 F.3d 834,
839 (9th Cir. 2020) (citing Hanna v. Plumer, 380 U.S. 460, 465,
85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) (some citations omitted).
In Hawai`i,

> [the] elements of tortious interference with
> contractual relations [are]: 1) a contract
> between the plaintiff and a third party; 2) the
> defendant's knowledge of the contract; 3) the
> defendant's intentional inducement of the third
> party to breach the contract; 4) the absence of
> justification on the defendant's part; 5) the
> subsequent breach of the contract by the third
> party; and 6) damages to the plaintiff.

Weinberg v. Mauch, 78 Hawai`i 40, 50, 890 P.2d 277, 287 (1995)
(citations omitted).  Also,

> Hawai`i courts have applied an absolute
> litigation privilege in defamation actions for
> words and writings that are material and
> pertinent to judicial proceedings.  See
> Abastillas v. Kekona, 87 Hawai`i 446, 447, 958
> P.2d 1136, 1137 (1998) (noting that the
> Intermediate Court of Appeals (ICA) affirmed the
> circuit court's dismissal of a libel action
> against an attorney based upon "absolute
> immunity"); Ferry v. Carlsmith, 23 Haw. 589, 591
> (1917) (adopting an absolute privilege for

communications made by attorneys "in the conduct of judicial proceedings," . . . ; <u>Hall v. State</u>, 7 Haw. App. 274, 285, 756 P.2d 1048, 1056 (1988) (holding that a deputy attorney general's alleged defamatory statements made in preparation of the defense of his clients were absolutely privileged); <u>McCarthy v. Yempuku</u>, 5 Haw. App. 45, 48, 678 P.2d 11, 14 (1984) (noting that the Hawai`i Supreme Court has adopted an absolute litigation privilege).

<u>Matsuura v. E.I. du Pont de Nemours & Co.</u>, 102 Hawai`i 149, 154, 73 P.3d 687, 692 (2003). The absolute litigation privilege is based on the balancing of policy considerations, including:

(1) promoting the candid, objective, and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

<u>Id.</u> at 155, 73 P.3d at 693.

Plaintiff asserts the Motion Defendants' conduct is not protected by the absolute litigation privilege. As explained by the Intermediate Court of Appeals of Hawai`i with respect to the absolute litigation privilege,

it has been recognized that the privilege adopted in Hawai`i is consistent with the privilege as set forth in Restatement (Second) of Torts § 586 (1977). <u>McCarthy[ v. Yempuku</u>], 5 Haw. App. [45,] 48–49, 678 P.2d [11,] 14–15 [(1984)].

Restatement (Second) of Torts § 586 states:

An attorney at law is absolutely privileged
to publish defamatory matter concerning
another in communications preliminary to a
proposed judicial proceeding, or in the
institution of, or during the course and as
a part of, a judicial proceeding in which he
participates as counsel, if it has some
relation to the proceeding.

In McCarthy, this court further explained the
policy reasons and the requirements for the
privilege to apply:

The absolute privilege is grounded on
the important public policy of "securing to
attorneys as officers of the court the
utmost freedom in their efforts to secure
justice for their clients."  Restatement
§ 586 comment a.  Thus, it not only protects
attorneys in the pursuit of their
profession, but also ensures the public's
right to zealous legal representation.
Counterbalancing this, however, is the
equally important policy of protecting
individuals from defamatory statements which
are unrelated to the judicial proceeding
involved.  Consequently, "the privilege does
not cover the attorney's publication of
defamatory matter that has no connection
whatever with the litigation."  Restatement
§ 586 comment c.

To avail himself of the absolute
privilege, an attorney has the burden of
proving the following essential elements:
(1) that the defamatory statements were made
in the course of a judicial proceeding and
(2) that the statements were related,
material, and pertinent to that proceeding.

Regarding the first element, the
Restatement construes "the course of a
judicial proceeding" as follows:

> The publication of defamatory matter by
> an attorney is protected not only when
> made in the institution of the
> proceedings or in the conduct of
> litigation before a judicial tribunal,
> but in conferences and other
> communications preliminary to the
> proceeding.

Restatement § 586 comment a.

> To prove the second element, it must be
> shown that there is a sufficient connection
> between the defamatory statements and the
> judicial proceeding.  See Restatement § 586
> comment c.  For the court to find such a
> connection, the statements must be
> (1) "reasonably related" to the proceeding,
> which means that the statements must "have
> some connection or logical relation to the
> judicial proceeding," and (2) "made to
> achieve the objects of the litigation."

5 Haw. App. at 48-49, 678 P.2d at 14. (internal
citations omitted).

Isobe v. Sakatani, 127 Hawai`i 368, 382-83, 279 P.3d 33, 47-48

(Ct. App. 2012) (emphasis omitted).  The litigation privilege

also applies to claims of intentional interference with

contractual relations and prospective economic advantage.

Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113

Hawai`i 251, 266-73, 151 P.3d 732, 747-54 (2007).  In

determining whether the absolute litigation privilege applied,

the Hawai`i Supreme Court in Kahala Royal focused on whether:

1) the attorneys were acting within their scope of

representation of their client; 2) the plaintiff alleged actual

malice; 3) the attorneys desired to harm the plaintiff in a way

that was independent of their desire to protect their client; and 4) the conduct occurred during judicial or quasi-judicial proceedings.  Id.  at 271-72, 151 P.3d 752-53.

Central to the absolute litigation privilege issue in the instant case is Plaintiff's allegation that Gerald Clay and Carlos Perez-Mesa agreed to the Motion Defendants' request to terminate Plaintiff from employment if he did not drop his state court case, EEOC complaint, and "intention" to file his federal case.  See Third Amended Complaint at ¶ 100.  Admittedly, protecting the alleged conversation between the Motion Defendants and Carlos Perez-Mesa wherein they asked him to fire Plaintiff if he did not stop his employment-related litigation against Shin and Nan (and related litigation/complaints) does not necessarily appear to serve the policy considerations of the litigation privilege as described in Matsuura, save the promotion of zealous advocacy.  See Matsuura, 113 Hawai`i at 268, 151 P.3d at 749 (listing policy considerations); Third Amended Complaint at ¶ 103.  However, it does constitute an act in the conduct of litigation and is related to the proceeding in the sense the Motion Defendants were acting in the interest of their clients.  See Kahala Royal, 113 Hawai`i at 268, 151 P.3d 749 (stating "[a]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other

tortious behavior . . . , so long as the act has some relation
to the proceeding" (quoting <u>Clark v. Druckman</u>, 218 W. Va. 427,
624 S.E.2d 864 (2005) (some alterations in <u>Kahala Royal</u>)).
Therefore, it falls under the umbrella of the absolute
litigation privilege.

Similarly, Wilson's face-to-face interaction with
Plaintiff wherein he threatened Plaintiff's employment and
leveled insults at Plaintiff, <u>see</u> Third Amended Complaint at
¶ 79, falls squarely under the litigation privilege. Despite
Plaintiff's claims that he was subjected to "a criminal act of
terroristic threatening and a hate crime since . . . Wilson used
ethnic slurs," the basis of the interaction was Wilson's
aggressive pursuit of his clients' interests. <u>See</u> Mem. in Opp.
at 23. Without speaking as to the lack of civility or ethics of
the conduct as alleged, such conduct was within the scope of
Wilson's representation of Shin and Nan, and the alleged use of
insulting language to do so does not demonstrate a personal
animus outside of Wilson's interest in representing his client.

Therefore, the Motion Defendants have demonstrated
that their alleged conduct is protected by the absolute
litigation privilege. For these reasons, the Motion is granted
with respect to Count III as to the Motion Defendants. Because
the absolute litigation privilege applies, the Court does not

reach the Motion Defendants' argument that Plaintiff failed to plead the elements of Count III.

## III. <u>Tortious Interference with Prospective Economic Advantage</u>

The elements of a tortious interference with prospective business advantage claim are:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

<u>Field v. Nat'l Collegiate Athletic Ass'n</u>, 143 Hawai`i 362, 378, 431 P.3d 735, 751 (2018) (emphasis and citation omitted).

For the same reasons as explained with respect to Count III, the Motion is granted, insofar as Count V is dismissed as to the Motion Defendants.

## IV. <u>Summary and Leave to Amend</u>

The Motion is granted to the extent it seeks dismissal of Plaintiff's claims in the Third Amended Complaint against the Motion Defendants.  The Ninth Circuit has held,

> [i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile.  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052

(9th Cir. 2003) ("Dismissal with prejudice and
without leave to amend is not appropriate unless
it is clear on de novo review that the complaint
could not be saved by amendment."); see also
Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227,
9 L. Ed. 2d 222 (1962) ("In the absence of any
apparent or declared reason — such as undue
delay, bad faith or dilatory motive on the part
of the movant, repeated failure to cure
deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue
of allowance of the amendment, futility of
amendment, etc. — the leave sought should, as the
[Federal Rules of Civil Procedure] require, be
'freely given.'").

Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1041–42

(9th Cir. 2015) (some alterations in La Raza). "Not all of the

factors merit equal weight. As this circuit and others have

held, it is the consideration of prejudice to the opposing party

that carries the greatest weight." Eminence Capital, 316 F.3d

at 1052 (citation omitted) (citation omitted). Also,

"[f]utility alone can justify the denial of a motion to amend."

Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004)

(citation and quotation marks omitted). However, "leave to

amend should be denied as futile only if no set of facts can be

proved under the amendment to the pleadings that would

constitute a valid and sufficient claim or defense." Barahona

v. Union Pac. R.R. Co., 881 F.3d 1122, 1134 (9th Cir. 2018)

(citation and internal quotation marks omitted).

Allowing Plaintiff to file a fifth version of his

complaint to amend his claims against the Motion Defendants

would be futile because Plaintiff's allegations against them necessarily rise out of their representation of Shin and Nan, do not suggest fraud or actual malice, see <u>Kahala Royal</u>, 113 Hawai`i at 749-50 (explaining fraud and actual malice are limitations on the absolute litigation privilege), and are thus precluded by the intracorporate conspiracy doctrine and/or absolute litigation privilege. Moreover, essential elements for both the tortious interference with contractual relations and prospective economic advantage are absent and thus those cannot be maintained, even if amendment was permitted. The Motion is granted as to the Motion Defendants' request that the dismissal be with prejudice because amendment of Plaintiff's claims against them would be futile.

## CONCLUSION

For the foregoing reasons, the Motion Defendants' Motion to Dismiss Third Amended Complaint [ECF 151], filed February 18, 2021, is GRANTED. Plaintiff's claims against Defendants Richard Wilson and Terrance Revere in Counts I, II, III, and V are DISMISSED WITH PREJUDICE. The Clerk's Office is DIRECTED to terminate those two defendants as parties immediately. The only remaining claims are Count I as to Shin and Nan, and Counts III and V as to Dwyer, Shin, and Nan, and Count IV as to Nan.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 30, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BOSKO PETRICEVIC VS. PATRICK SHIN, ET AL; CV 20-00283 LEK-WRP; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**