UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| BOSKO PETRICEVIC, | CIV. NO. 20-00283 LEK-WRP |
| Plaintiff, | |
| vs. | |
| PATRICK SHIN, RICHARD WILSON, JOHN DWYER, TERRANCE REVERE, NAN, INC., A DOMESTIC PROFIT CORPORATION, | |
| Defendants. | |

**ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Before the Court is Defendant John Dwyer's ("Dwyer")
Motion to Dismiss or Alternatively, for Summary Judgment ("Dwyer
Motion"). [Dkt. no. 213.] Dwyer filed his concise statement of
facts ("Dwyer CSOF") on May 7, 2021. [Dkt. no. 214.] On May 8,
2021, Defendants Richard Wilson ("Wilson") and Terrance Revere
("Revere") filed their statement of non-opposition. [Dkt.
no. 216.] On May 10, 2021, Defendants Nan, Inc ("Nan") and
Patrick Shin ("Shin") (collectively "Nan") filed their
substantive joinder ("Nan Joinder") to the Dwyer Motion. [Dkt.
no. 19.] On June 4, 2021, *pro se* Plaintiff Bosko Petricevic
("Plaintiff") filed his memorandum in opposition to the Dwyer
Motion. [Dkt. no. 237.] On June 10, 2021, Dwyer filed his
reply. [Dkt. no. 242.] On June 11, 2021, Plaintiff filed his

concise statement of fact in support of his Opposition to the Motion ("Plaintiff CSOF"). [Dkt. no. 244.] This matter came on for hearing on June 25, 2021.

Plaintiff sought leave to file additional briefing on June 26, 2021, [dkt. no. 248,] and leave was granted on June 29, 2021, [dkt. no. 249]. Plaintiff's supplemental briefing was filed on June 29, 2021 ("6/29 Memorandum"). [Dkt. no. 250.] Dwyer filed his memorandum in opposition to the 6/29 Memorandum on July 9, 2021. [Dkt. no. 256.] Plaintiff filed his reply in support of his supplemental briefing on July 11, 2021 ("7/11 Reply"). [Dkt. no. 259.] Plaintiff neither sought or obtained leave of court to file the 7/11 Reply and therefore the 7/11 Reply is hereby stricken and will not be considered by the Court. LR7.2 ("No further or supplemental briefing shall be submitted without leave of court.") Nan's reply, filed on July 9, 2021, [dkt. no. 257,] is similarly stricken and will not be considered for the same reasons.

The Motion is granted for the reasons set forth fully below.

## BACKGROUND

The instant matter, in brief, involves Plaintiff's allegations that he was promised an equity partnership with Clay Chapman Iwamura Pulice & Nervell ("Clay Chapman"), that Dwyer approached a Clay Chapman partner, Gerald Clay ("Clay"), and

2

that Dwyer asked Clay to pressure Plaintiff to drop his state court lawsuit against Shin and Nan. [Complaint, filed 6/22/20 (dkt. no. 1).] Plaintiff filed the original complaint in this matter on June 22, 2020 and, as against Dwyer, alleged that Dwyer obstructed justice by intimidating Plaintiff in violation of 42 U.S.C. § 1985(2). [Id. at ¶¶ 101, 104.]

In the latest iteration of Plaintiff's claims, he alleges two causes of action, both state law claims, against Dwyer: 1) tortious interference with contractual relations against Shin, Wilson, Revere, Nan, and Dwyer ("Count III");, [Third Amended Complaint, filed 2/5/21 (dkt. no. 151) at ¶¶ 154-58;] and 2) tortious interference with prospective economic and business advantage against Shin, Wilson, Revere, Nan, and Dwyer ("Count V"), [id. at ¶¶ 168-72].

I.   **Plaintiff's Employment At Nan, Inc.**

According to the Third Amended Complaint, Plaintiff is an attorney licensed in the State of Hawai`i. [Id. at ¶ 1.] On March 18, 2019, Plaintiff was hired by Nan, a construction company owned by Shin, as in-house litigation counsel. [Id. at ¶¶ 2, 5, 17.] Between April and June of 2019, Plaintiff alleges that he expressed his opinion to Shin that some of their practices were illegal. [Id. at ¶ 41.] Consequently, Shin allegedly insulted and threatened to fire Plaintiff. [Id. at

¶ 42.]  Plaintiff complained about this conduct, as well as the underlying conduct that Plaintiff had originally complained about to Shin, to other executive officers at Nan.  [Id. at ¶ 55.]  Shortly before he was terminated on June 10, 2019, Plaintiff sent an email to Nan executive officer Wyeth Matsubara complaining Nan was a hostile work environment.  See id. at ¶¶ 64-65.

II.  **Plaintiff's Employment At Clay Chapman**

On September 3, 2019, Plaintiff began working for Clay Chapman.  [Id. at ¶ 67.]  On September 13, 2019, Plaintiff filed a complaint for discrimination and retaliation against Shin and Nan with the United States Equal Employment Opportunity Commission ("EEOC").  [Id. at ¶ 68.]  In approximately October 2019, Plaintiff alleges Gerald Clay ("Clay") unconditionally promised Plaintiff an equity partnership with the law firm, provided his employment with the firm continued.  [Id. at ¶ 69.]  On October 23, 2019, Plaintiff filed a complaint in state court against Nan and Shin for, among other claims, wrongful termination.  [Id. at ¶ 70.]  Wilson represents Nan and Shin in the state court case.  [Id. at ¶ 72.]

On November 1, 2019, Shin allegedly called Clay, and left a voicemail requesting a call back.  [Id. at ¶¶ 74-75.]  Plaintiff alleges Shin had no reason to call Clay other than to

4

pressure him and the law firm to terminate Plaintiff's employment and thus jeopardize his future partnership if Plaintiff did not drop his state court case and his EEOC case. [Id. at ¶ 77.]  On a later but unspecified date, Plaintiff alleges that Wilson admitted to Plaintiff in a face-to-face meeting: he had engaged in a conspiracy with Nan and Shin to force Plaintiff to drop his state court case and his EEOC case; and, if Plaintiff failed to drop the cases, he would once again instruct Shin and Nan to call Plaintiff's employer to "threaten his employment again and try to get him fired again."  [Id. at ¶ 79.]  Plaintiff alleges that Clay subsequently told Plaintiff "Shin and Wilson are people of influence and power and that they can and will take his job away if Plaintiff doesn't drop his legal actions against [Nan] and Shin."  [Id. at ¶ 80.]  Clay also allegedly told Plaintiff "his future promised partnership could be in danger if he doesn't drop the lawsuit and EEOC complaint against . . . [Nan] and Shin."  [Id. at ¶ 84.]

A few weeks later, Dwyer allegedly approached Clay at the behest of Shin and Nan, and asked "if there is anything he could do to make this state lawsuit and EEOC complaint against Defendants Shin and [Nan] . . . go away[]", [id. at ¶¶ 87-88,] and Clay thereafter allegedly repeated his warning to Plaintiff that "his partnership and his employment could be taken away

unless he drops the State of Hawaii Complaint and the EEOC charge," [id. at ¶ 92].

On approximately May 8, 2020, Plaintiff emailed Wilson that he would be filing a federal suit against Wilson, Shin, Nan, and Dwyer for violation of his civil rights. [Id. at ¶ 94.] Plaintiff alleges a few days later, Wilson, Shin, Nan, and Revere "conspired to deter, harass, intimidate, threaten and interfere with Plaintiff's employment as [a] result of his intention to file his federal civil rights lawsuit . . . and as a result of having already filed his State of Hawaii lawsuit and EEOC action." [Id. at ¶¶ 4, 95.] Carlos Perez-Mesa, Esq. ("Perez-Mesa"), a partner at Clay Chapman was allegedly contacted by Wilson and Revere, who allegedly complained about Plaintiff, and made false accusations against him. Perez-Mesa, along with Clay, allegedly warned Plaintiff that he was likely to be fired if he did not drop his state court case and EEOC complaint. [Id. at ¶¶ 96-97, 101-02.] On July 30, 2020, Plaintiff was terminated from Clay Chapman. [Id. at ¶ 122.] Plaintiff contends that his termination interfered with his equity partnership agreement. [Mem. in Opp. at 8.]

Dwyer asserts Plaintiff was terminated due to poor performance, missing an important meeting with a client, and missing a federal court scheduling conference requiring another attorney at the firm to cover for him. [Dwyer CSOF at ¶ 13

(citing id., Decl. of David A. Nakashima ("Nakashima Decl.")

Exh. C (termination letter dated 7/31/2020 ("Termination

Letter").]

## STANDARD

The standard applicable to a Fed. R. Civ. P. 56 motion is:

> A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. Id. The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id.

I.V. v. Wenatchee Sch. Dist. No. 246, 342 F. Supp. 3d 1083, 1086

(E.D. Wash. 2018).

## DISCUSSION

## I.   Concise Statement of Facts

Plaintiff filed his concise statement of facts in

opposition to the Motion on June 11, 2021 ("Plaintiff's CSOF").

[Dkt. no. 244.] As Plaintiff concedes, the Plaintiff CSOF was

untimely filed. He asks, however, for dispensation because he

was confused about the need to file a concise statement of fact and, when Dwyer filed his reply, he was belatedly reminded of his obligation to do so.  According to the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"), "[f]or purposes of a motion for summary judgment, material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.  LR56(g).  The Court finds that LR56.1(e) requires the opposition memorandum and Plaintiff CSOF to be filed at the same time, and that the Plaintiff CSOF was not timely filed. The Court therefore may choose not to consider it.  <u>See</u> Fed. R. Civ. P. 56(e)(2)-(3).  Plaintiff is a licensed attorney who has practiced in federal court and thus is presumed well-versed in the requirements of the Local Rules for the District of Hawai`i. However, the Court denies Dwyer's request to strike the Plaintiff CSOF and chooses to consider the Plaintiff CSOF in deciding the Motion.  Plaintiff is admonished and reminded of his responsibilities to follow all court rules.

## II.   <u>Tortious Interference with Contractual Relations Claim</u>

Under Hawai`i law, a claim for tortious interference with contractual relations requires:

> (1) a contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional

> inducement of the third party to breach the
> contract, (4) absence of justification on the
> defendant's part, (5) the subsequent breach of
> the contract by the third party, and (6) damages
> to the plaintiff.  See 3 J. Dooley, Modern Tort
> Law-Liability & Litigation § 44.02 (B. Lindahl
> rev. 1984); Bendix Corp. v. Adams, 610 P.2d 24
> (Alaska 1980).

Burgess v. Arita, 5 Haw. App. 581, 594, 704 P.2d 930, 939

(1985).  Dwyer argues that Plaintiff did not have an employment

contract but, rather, was an at-will employee of Clay Chapman.

[Mem. in Supp. of Dwyer Motion at 6.]  The significance of

Plaintiff's status is

> that, "in the absence of a written employment
> agreement, a collective bargaining agreement, or
> a statutorily-conferred right, employment is at-
> will."  Shoppe v. Gucci America, Inc., 94 Hawai`i
> 368, 383, 14 P.3d 1049, 1064 (2000).  The right
> of an employer to terminate an at-will employee
> "can be contractually modified and, thus,
> qualified by statements contained in employee
> policy manuals or handbooks issued by employers
> to their employees."  Id. at 368, 14 P.3d at 1064
> (quoting Kinoshita v. Pacific Airlines, 68 Haw.
> 594, 601, 724 P.2d 110, 115-16 (1986)).  In fact,
> "if an employer issues policy statements or
> rules, in a manual or otherwise, and, by its
> language or by the employer's actions, encourages
> reliance thereon, the employer cannot be free to
> only selectively abide by it."  Shoppe, 94
> Hawai`i at 385, 14 P.3d at 1066 (citation
> omitted).

Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai`i 92, 118,

176 P.3d 91, 117 (2008), *as corrected* (Jan. 25, 2008).

Dwyer presents evidence that he never asked Clay to

terminate Plaintiff's employment, [Dwyer CSOF, Nakashima Decl.,

Exh. A (Declaration of Gerald Clay ("Clay Decl.")) at ¶ 10,] that Clay "did not offer, promise or guarantee [Plaintiff] a partnership . . . ," [id. at ¶ 14,] and that Clay did "not have the capacity and authority, on [his] own, to offer an attorney partnership in Clay Chapman because that is a decision that must be made by Clay Chapman's Board of Directors," [id. at ¶ 15].

Plaintiff denies he was an at-will employee and the evidence that he offers consists of his declaration, e-mail communications from a couple of the Law Firm partners, and the allegations in the Third Amended Complaint. [Plaintiff CSOF at PageID#: 3826.] While he argues that his averments sufficiently create a genuine issue of material fact that necessarily defeats an entry of summary judgment against him, he is mistaken:

> Only admissible evidence may be considered. Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir. 2002). The nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings. Liberty Lobby, 477 U.S. at 248, 106 S. Ct. 2505. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Id. at 255, 106 S. Ct. 2505. However, the "mere existence of a scintilla of evidence" will not defeat summary judgment. Id. at 252, 106 S. Ct. 2505.

Wenatchee Sch. Dist. No. 246, 342 F. Supp. 3d at 1086–87 (alteration in Wenatchee Sch. Dist. No. 246).

Plaintiff refers to his testimony in his declaration:

10.   To start with, Gerald Clay did promise me an equity partnership in Clay Chapman firm. Mr. Clay

and I reached an agreement as to me becoming an equity partner in the Clay Chapman Law Firm.  We have agreed and reached an agreement as to all the terms and details. This agreement is corroborated in the email he sent me on June 23, 2020 – **attached herein as Exhibit 1,** when former Defendant Clay stated to me in writing the following:

"If you want it [my future] to be in this firm, **you have to make life enjoyable for your future partners**."

11.   The reason Mr. Clay used the words "**your future partners**" is because we had an equity partnership agreement.

12.   I was fired from Clay Chapman law firm and my agreed upon equity partnership agreement was broken and taken away as a result of the conspiracy and tortious interference by Defendants Nan, Wilson, Shin, Revere and **Dwyer**, as explained below and detailed in my Third Amended Complaint.

[Plaintiff CSOF at PageID#: 3826 (referring to Mem. in Opp., Declaration of Bosko Petricevic, filed 6/4/21 ("Pltf.'s Decl.") at ¶¶ 10-12 (alteration in Pltf.'s Decl.) (emphases in Pltf.'s Decl.)).]  First, Plaintiff's bare statement that an equity partnership agreement exists is merely an allegation and cannot, by itself, provide a basis to defeat summary judgment.  In examining Clay's e-mail dated February 23, 2020 to Plaintiff in the light most favorable to Plaintiff, Clay's reference to "future partners" does create an inference favorable to Plaintiff that Clay had discussed Plaintiff becoming a Clay Chapman partner in the future.  [Mem. in Opp., Pltf.'s Decl.,

Exh. 1 (E-mail dated 6/23/20 from Gerald S. Clay).]  However, Plaintiff is not the author of Clay's e-mail and therefore Plaintiff's averment that Clay's reason for using the words "future partners" in his email was because they had an agreed upon equity partnership agreement is based on speculation and not admissible.  See Fed. R. Evid. 403, 602.  Nor can the Court conclude that any favorable inferences drawn from Clay's e-mail dated February 22, 2020 to Plaintiff establish that a partnership contract existed; the only reference to a partnership is:  "If you let me, I can guide you to become a Partner in successful downtown Law Firm."  [Mem. in Opp., Pltf.'s Decl., Exh. 3 (E-mail dated 2/22/20 from Gerald S. Clay).]  The most favorable inference from both Clay's statements is that if Plaintiff works for Clay's law firm, Clay can help him become a partner in the future.

The formation of a contact, under Hawai`i law, requires agreement of the parties on the material terms and conditions:

> We have held that 'the parties not having reached agreement upon all of the essential and material terms, conditions or covenants of the agreement, there was failure of mutual assent or a meeting of the minds and therefore no binding contract.  It is a fundamental principle of law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract.'  Honolulu Rapid Transit v. Paschoal, 51 Haw. 19, 26-27, 449

P.2d 123, 127 (1968).

Carson v. Saito, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971).
Clay's testimony is that he did not offer or guarantee a
partnership in Clay Chapman; [Clay Decl. at ¶ 14;] that he did
not have the unilateral capacity and authority to offer
partnership; [id. at ¶ 15;] that Clay Chapman's "Board of
Directors never delegated authority to [him] to make partnership
offers on [his] own . . . ;" [id. at ¶ 16;] that "Clay Chapman's
Board of Directors never discussed offering [Plaintiff]
partnership, or 'guaranteeing' such status"; [id. at ¶ 17;] and
that he could "not recall any instance in which the Board of
Directors has offered an associate a partnership . . . after
less than one year of employment with the firm," [id. at ¶ 18].
In short, Clay denies that an offer was made and accepted, and
consideration tendered in order to create a contract between
Plaintiff and Clay Chapman that involved an equity partnership
interest for Plaintiff.

Plaintiff asserts in his CSOF that Clay did promise
him an equity partnership in Clay Chapman and points to certain
portions of his declaration, the portions relevant to the issue
of whether a partnership contract existed provides:

> 10.  To start with, Gerald Clay did promise me an
>      equity partnership in Clay Chapman firm.
>      Mr. Clay and I reached an agreement as to me
>      becoming an equity partner in the Clay
>      Chapman Law Firm.  We have agreed and

13

reached an agreement as to all the terms and details.  This agreement is corroborated in the email he sent me on June 23, 2020 – **attached herein as Exhibit 1,** when former Defendant Clay stated to me in writing the following:

"If you want it [my future] to be in this firm, **you have to make life enjoyable for your future partners.**"

11. The reason Mr. Clay used the words **"your future partners"** is because we had an equity partnership agreement.

12. I was fired from Clay Chapman law firm and my agreed upon equity partnership agreement was broken and taken away as a result of the conspiracy and tortious interference by Defendants Nan, Wilson, Shin, Revere and **Dwyer,** as explained below and detailed in my Third Amended Complaint.

22. On or about October 2019, Gerald Clay, a senior named partner at Clay Chapman Iwamura Pulice & Nervell, and my boss, promised me an equity partnership at the firm due to immediate good results I produced.

44 Gerald Clay further stated to me that he told Defendant Dwyer that I had an agreed upon equity partnership with the firm and that Defendants Wilson, NAN, Shin and Dwyer were therefore aware of my promised partnership.

49. Mr. Clay specifically told me that Defendants NAN, Shin, Dwyer and Wilson all know that I have been promised a partnership and that I had a partnership agreement with Clay Chapman firm (Mr. Clay admitted to me that he told them) and that the Defendants NAN, Shin, Dwyer and Wilson will take away my partnership unless I drop my State lawsuit.

56.  Both Mr. Clay and Mr. Perez-Mesa stated to
     me that because of Defendants Wilson, **Dwyer**,
     Shin, NAN and Revere's communications to
     Mr. Perez-Mesa and Mr. Clay respectively, my
     partnership and employment will be taken
     away unless I drop the State of Hawaii
     Complaint against Defendants NAN and Shin,
     and abandon my intention to file my federal
     lawsuit.  Mr. Perez-Mesa further stated to
     me that both Defendant Wilson and Revere
     talked to him on behalf of themselves and on
     behalf of Defendants Shin, **Dwyer** and NAN.

77.  Mr. Clay admitted to me that NAN, Shin,
     Revere, Wilson and **Dwyer** all know that I
     have been promised a partnership in Clay
     Chapman firm and that I have a partnership
     agreement (Mr. Clay admitted to me that he
     told them, especially told Defendant Dwyer)
     and that the Defendants NAN, Shin, Revere,
     Wilson and Dwyer will take away my
     partnership unless I drop my State and
     federal lawsuits against them.

85.  **Mr. Clay told me in person that I was being
     fired and my partnership agreement was being
     breached due to demands from Defendants
     Shin, NAN, Wilson, Dwyer and Revere since I
     refused to drop my federal and state
     lawsuits against them in exchange for
     business opportunity and various other
     favors that Defendants Dwyer, Shin, Wilson,
     NAN and Revere were going to provide to Clay
     Chapman.**

[Mem. in Opp., Pltf.'s Decl. (emphases in Pltf.'s Decl.).]

        Plaintiff cannot defeat the Motion by simply stating

that a contract exists.  Rather, he must identify "specific

facts showing that there is a genuine issue for trial."  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Conclusory and

speculative testimony does not raise genuine issues of fact and

is insufficient to defeat summary judgment.  See Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Plaintiff argues that Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) commands that this Court must accept the whole of his declaration, despite being self-serving. He is mistaken.  While Nigro instructs that "the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature," it also provides that

> a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.  See id.; see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1059 n. 5, 1061 (9th Cir. 2002) (holding that the district court properly disregarded the declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true); F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Id. at 497–98.  Plaintiff's declaration is replete with conclusory statements, such as "John R. Dwyer, Gerald Clay and Carlos Perez-Mesa's declarations are not true and extremely misleading," [Mem. in Opp., Pltf.'s Decl. at ¶ 7,] or inadmissible hearsay, such as "Defendant Dwyer did know about my agreed upon equity partnership agreement with Clay Chapman . . .

since Gerald Clay . . . admitted to me face to face that he

specifically told Defendant Dwyer of my partnership agreement

with the firm," [id. at ¶ 13].  As a result, having examined

Plaintiff's declaration and attached exhibits, (dkt. nos. 237-1,

237-3, and 237-5), the Court concludes that Plaintiff's

averments and exhibits lack supporting admissible evidence and

are insufficient to raise a genuine issue of material fact as to

whether Plaintiff had a partnership or employment contract with

Clay Chapman.

Indeed, Plaintiff also questions the sufficiency of

his allegations as he sought leave to file a fourth amended

complaint.  [Dkt. no. 179.]  In denying this request to amend,

the magistrate judge explained,

> the only factual allegations to support
> Plaintiff's conspiracy claim against Defendant
> Dwyer or the Nan Defendants related to his
> Federal Court Lawsuit is that "all" Defendants
> "approached" "various" Clay Chapman law firm
> partners at some unspecified time after he filed
> his federal court Complaint demanding that
> Plaintiff be fired if he did not drop the
> lawsuit.  ECF No. 179-1 ¶¶ 118, 119; see also id.
> ¶¶ 124, 153, 158.  Plaintiff's proposed new
> allegations provide no details as to what
> specific actions Defendant Dwyer or the Nan
> Defendants took as part of the alleged conspiracy
> after Plaintiff filed his federal Complaint.  The
> only specific allegations in the proposed Fourth
> Amended Complaint regarding Defendant Dwyer's
> conduct and the Nan Defendants' conduct occurred
> before the federal lawsuit was filed.  See id.
> ¶¶ 75, 78 (alleging Defendant Shin left a
> voicemail message and spoke with Mr. Clay in
> November 2019); ¶ 88 (alleging Defendant Dwyer

17

> approached Mr. Clay at a social function a "few
> weeks" after November 2019).

[Order Denying Plaintiff's Motion for Leave to File Fourth
Amended Complaint, filed 4/27/21 (dkt. no. 207) at 8-9.]   The
magistrate judge found that "Plaintiff's conclusory allegations
are insufficient to state a claim for violation of Section
1985(2), part one, against Defendant Dwyer or the Nan Defendants
for conspiracy to obstruct his Federal Court Lawsuit," and
denied Plaintiff request for leave to amend to assert a claim
for violation of § 1985(2) against Dwyer and the Nan Defendants.
[Id. at 9.] He also denied the remainder of the requested
amendments, reasoning:

> Plaintiff has been given three opportunities to
> amend his claims in this case.  Defendants have
> filed multiple motions to dismiss, which were
> mooted by Plaintiff's subsequent pleadings.  See
> ECF Nos. 13, 39.  If Plaintiff is granted leave
> to file another amended complaint to add the
> remaining proposed allegations that, as Plaintiff
> concedes, do not substantively change his claims,
> Defendants will be prejudiced by having another
> round of fully briefed motions to dismiss mooted
> and having to file another response to
> Plaintiff's amended complaint.

[Id. at 10.]

In Plaintiff's four complaints filed in this matter,
he refers to a "possible future partnership", [Complaint at ¶ 86
("Because of that, Plaintiff's current standing in his firm and
possible future partnership was threatened and brought in

18

question . . . ."),] "future partnership," [First Amended Complaint, filed 7/10/20 (dkt. no. 10) at ¶ 101,] a "future promised partnership", [Second Amended Complaint, filed 11/13/20 (dkt. no. 67) at ¶ 83 ("Gerald Clay stated to Plaintiff that his future promised partnership could be in danger if he doesn't drop the lawsuit and EEOC complaint against Defendants NAN and Shin."),] and being on a "partnership track" when he was fired, [Third Amended Complaint at ¶ 114 ("Later that day, Mr. Clay told Plaintiff that as a result of Defendants Shin . . . , and Revere's influence, calls, and emails, his partnership track was taken away and that he will probably be fired unless he drops his federal and state lawsuit against Defendants NAN, . . . .").]  "Judicial admissions are formal admissions in the pleading which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (quoting In re Fordson Engineering Corp., 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)).  Factual assertions in a complaint, unless amended, are conclusively binding judicial admissions.  Id.

At oral argument, Plaintiff attempted to argue case law that he had not included in his opposition and was advised that he could seek leave to file a supplemental briefing.  In the 6/29 Memorandum, Plaintiff had sought leave to add Nigro,

19

784 F.3d 495, as support for his opposition, however, he

impermissibly included an additional declaration that suddenly

includes specific terms of the partnership agreement he claims

to have had with Clay Chapman but failed to provide in

Plaintiff's CSOF:

>    3.   Gerald Clay and I reached an agreement as to
>         me becoming an equity partner in the Clay
>         Chapman Law Firm. We have agreed and reached
>         an agreement as to all the terms and
>         details.  We have agreed on all relevant
>         terms such as my buy-in amount (it was
>         $250,000.00), share of partnership profits
>         (10% of the profits which was estimated to
>         be $500,000.00), the extent of my decision-
>         making authority regarding management of the
>         firm (I was going to have a vote on all
>         hiring and other management decisions of the
>         firm).  We have also agreed on several other
>         smaller items such as how to market me and
>         introduce me as a new partner.  We have also
>         agreed to consideration which was in part me
>         promising to stay with the firm and not
>         leaving the firm for other opportunities
>         available to me at the time when this
>         agreement was reached in exchange for me
>         becoming an equity partner as described
>         above.
>
>    4.   This agreement was reached and concluded
>         several months prior to my termination which
>         happened on July 31, 2020.  At the time this
>         agreement was reached, I was no longer an
>         employee but an equity partner of the firm.

[6/29 Mem., Suppl. Decl. of Bosko Petricevic at ¶¶ 3-4.]

First, Plaintiff's supplemental declaration is at

direct odds with his judicial admissions that he had a "possible

future partnership".  Second, it is not part of Plaintiff CSOF

that he was required to file <u>with</u> his memorandum in opposition to Dwyer's Motion and therefore the Court disregards Plaintiff's supplemental declaration in its entirety.  <u>See</u> Rule 56(e)(2)-(3). Even if Plaintiff's supplemental declaration was considered by the Court, this declaration directly contradicts his own judicial admissions that establish that, at best, he had a possibility of a future partnership at Clay Chapman.  This evidence falls far short of creating a genuine issue of material fact of whether a contract existed.

Dwyer argues that the e-mail evidence presented by Plaintiff in his opposition is hearsay and thus cannot be relied on to contravene summary judgment.  While the evidence offered by Plaintiff is not in a form that would be admissible at trial, he is not required to do so.  <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003) (proper inquiry is not admissibility of the evidence's form but whether contents are admissible). However, "[w]hile the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence."  <u>Norse v. City of Santa Cruz</u>, 629 F.3d 966, 973 (9th Cir. 2010) (citations omitted). Clay's e-mails presumably could be admitted through Clay's testimony at trial.  Thus, the contents of Clay's e-mails submitted by Plaintiff have been considered and all inferences

have been drawn in Plaintiff's favor.  Notwithstanding this
consideration, Plaintiff has not raised a genuine issue of
material fact as to the absence of a contract with Clay Chapman.
Dwyer argues that a tortious interference with contractual
relations claim requires the existence and breach of an
enforceable contract.  [Mem. in Supp. of Dwyer Motion at 5
(citing Meridian Mortg., Inc. v. First Hawaiian Bank, 109
Hawai`i 35, 122 P.3d 1133, 1143 (App. 2005)).]  In the absence
of an agreement to the contrary, Dwyer submits, employment is at
will.  [Id. at 6 (citing Shoppe v. Gucci Am., Inc., 94 Hawai`i
368, 383, 14 P.3d 1049 (2000)).]  Because Plaintiff has not
produced a written employment agreement between himself and Clay
Chapman, his employment with that firm is presumed to be at will
and terminable by either party for any reason or no reason.
[Id. at 7 (citing Frank Brunckhorst CO., L.L.C. v. Coastal Atl.,
Inc., 542 F. Supp. 2d 452, 463 (E.D. Va. 2008); McManus v. MCI
Communications Corporation, 748 A.2d 949, 957 (D.C. 2000);
Auston v. Schubnell, 116 F.3d 251, 255 (7th Cir. 1997); Kosson
v. Algaze, 203 A.D.2d 112, 112, 610 N.Y.S.2d 227, 228 (1994)).]
Dwyer contends that an at will employment relationship cannot
support a claim for tortious interference with a contract.  [Id.
at 8.]  The Court agrees.

        The permissible and most favorable inferences to be
drawn from Plaintiff's assertions in the complaints, declaration

and exhibits establish that he was an at will employee with the possibility of becoming a partner at Clay Chapman (i.e., was on "partnership track"), and that the possibility to become a partner was contingent upon his continued at-will employment as an attorney at Clay Chapman. "[A]t-will employment is, 'by definition, . . . terminable at the will of either party, for any reason or no reason at all.'" Shoppe v. Gucci Am., Inc., 94 Hawai`i 368, 383, 14 P.3d 1049, 1064 (2000) (quoting Best Place, Inc. v. Penn America Ins. Co., 82 Hawai`i at 124, 920 P.2d at 357 (1996)). Plaintiff contends that the contract that he complains of being interfered with is his possible partnership, not his employment with Clay Chapman.

Even if the Court were to assume that the possibility of partnership was a promise by Clay or Clay Chapman to offer an equity partnership at some point to Plaintiff, it would be a too far to stretch, even in the light most favorable to Plaintiff, to find that he has raised a genuine issue of material fact as to a contract claim for promissory estoppel — "the essence of which is detrimental reliance on a promise." Ravelo by Ravelo v. Hawaii Cnty., 66 Hawai`i 194, 199, 658 P.2d 883, 887 (1983) (citing Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343 (1969)). Hawai`i law requires that the "promisor should reasonably expect to induce action or forbearance on the part of the promisee" for an enforceable

claim of promissory estoppel.  Id. (quoting Restatement of Contracts § 90 (1932)).  Even with all permissible and favorable inferences drawn from Plaintiff's assertions in the complaints, declaration and exhibits, admissible evidence that Plaintiff was induced to some action or forbearance is lacking.  Plaintiff raised, for the first time, at oral argument that he "gave up other opportunities" but support for this bare contention is not readily apparent anywhere in Plaintiff CSOF.  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (reaffirming that "a district court is 'not required to comb the record to find some reason to deny a motion for summary judgment . . . .'" (quoting Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988)).

In short, there are no inferences that support the existence of a partnership contract between Plaintiff and Clay Chapman.  Because no genuine issue of material fact exists that there was not a partnership contract between Plaintiff and Clay Chapman, Plaintiff's claim for tortious interference with contractual relations fails as a matter of law.

Dwyer additionally argues that summary judgment is appropriate because he had no knowledge of any contract at issue, a necessary element of Plaintiff's claim.  [Mem. in Supp. of Dwyer Motion at 8 (citing Alii Sec. Sys., Inc. v. Prof'l Sec. Consultants, 139 Hawai`i 1, 8-9, 383 P.3d 104, 111-12 (App.

2016); <u>Burgess v. Arita</u>, 5 Haw. App. 581, 594, 704 P.2d 930, 939 (1985); Restatement (Second) of Torts § 766 (1979), cmt. i.).] He provides, in support, declarations of Clay and Perez-Mesa attesting that Revere made no demand for Plaintiff's termination, [Dwyer CSOF, Nakashima Decl., Exh. B (Decl. of Carlos Perez-Mesa ("Perez-Mesa Decl.")) at ¶ 11,] Dwyer never asked Clay to terminate Plaintiff from employment nor to have Plaintiff drop lawsuits against anyone, [Dwyer CSOF, Nakashima Decl., Exh. A (Clay Decl.) at ¶ 10,] and that Clay did not offer or promise Plaintiff a partnership in Clay Chapman nor he did he have the authority to do so on his own, [<u>id.</u> at ¶¶ 14-17,] and Clay Chapman's letter dated July 31, 2020 to Plaintiff terminating his employment, [Dwyer CSOF, Nakashima Decl., Exh. C (Termination Letter) at PageID #: 3485 ("[y]our employment with [Clay Chapman] is terminated for cause, effective immediate due to poor performance. Most notably that you missed meetings, court appearances and hearings.").]

        Plaintiff counters with his averments that Dwyer did know about his equity partnership agreement with Clay Chapman, [Mem. in Opp., Pltf.'s Decl. at ¶¶ 13-16,] that Clay admitted to Plaintiff that he was fired due to Dwyer's demands, [<u>id.</u>,] that Dwyer had notice of his contract because he filed a lawsuit against Nan and Shin, [<u>id.</u> at ¶¶ 23, 25-27,] that Clay, Perez-Mesa and Bradley Pulice ("Pulice"), and Wilson and Shin told

25

Plaintiff that Dwyer conspired to have Shin call Clay to threaten Plaintiff's employment in order to get Plaintiff to drop his lawsuit against Nan and Shin, [id. at ¶ 26,] that Clay told Plaintiff that Shin, Dwyer and Wilson are so influential and powerful that they can take Plaintiff's job and partnership, [id. at ¶ 34,] that Dwyer and others approached Clay at a social function after his lawsuit against Nan and Shin was published in an electronic newspaper article, and Dwyer demanded that Clay fire Plaintiff unless he dropped the lawsuit, [id. at ¶ 37; id., Pltf.'s Decl., Exh. 4 (Civil Beat article dated 10/24/19 ("Civil Beat Article")),] that Clay admitted that Dwyer and others told him to fire Plaintiff unless he dropped the lawsuit and that Shin's deposition testimony corroborated that this event occurred, [Mem. in Opp., Pltf.'s Decl. at ¶¶ 38-39,] that Clay told Plaintiff that Clay told Dwyer that Plaintiff had "an agreed upon equity partnership with [Clay Chapman]" and therefore Dwyer was aware of the "promised partnership", [id. at ¶ 44,] that Dwyer approached Clay and demanded that he fire Plaintiff unless the lawsuit against Nan and Shin was dropped, [id. at ¶¶ 46, 66-67,] that Clay told Plaintiff that Nan, Shin, Dwyer and Wilson "all know that [Plaintiff] has been promised a partnership and that [he] had a partnership agreement with [Clay Chapman] . . . ," [id. at ¶ 49,] that Clay and Perez-Mesa stated that, because of Dwyer and others speaking to them, Plaintiff's

26

"partnership and employment" will be taken away, [id. at ¶¶ 56-58,] that Dwyer is in conspiracy with others to threaten his future partnership, [id. at ¶ 60,] that Pulice admitted to Plaintiff that Dwyer and others approached Clay Chapman partners demanding that they fire Plaintiff or get him to drop the lawsuits, [id. at ¶¶ 80-81,] Plaintiff was fired on July 31, 2020 and was told that his "partnership agreement was being breached due to demands from" Dwyer and others because Plaintiff refused to drop his lawsuit, [id. at ¶¶ 84-85,] and that Dwyer knew about Plaintiff's "agreed upon partnership and contract," and intentionally induced Clay Chapman to take away Plaintiff's employment and "promised and agreed upon partnership" and his "prospective economic and business advantage," [id. at ¶ 91]. Plaintiff also relies on the Civil Beat Article and an excerpt from Shin's deposition testimony [Pltf.'s CSOF, Pltf.'s Decl., "Shin Deposition Joint Defense Excerpt" dated May 28, 2021 (dkt. no. 242-1).]

        "To defeat summary judgment, [a plaintiff] 'must respond with more than mere hearsay and legal conclusions.'" Orr, 285 F.3d 764, 783 (quoting Kaiser Cement Corp. v. Fischbach and Moore, Inc., 793 F.2d 1100, 1104 (9th Cir. 1986)). A plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. (citation and quotation marks omitted). A trial court may only consider

admissible evidence in ruling on a motion for summary judgment. Id.

Plaintiff submits his declaration as support for his opposition to summary judgment and avers that Dwyer knew about his partnership agreement and intentionally forced Clay Chapman to terminate his employment based on Clay, Pulice and Perez-Mesa's statements to Plaintiff. Federal Rule of Civil Procedure 56(e), in pertinent part, requires that affidavits submitted in support of a motion for summary judgment must be made on the personal knowledge of an affiant who is competent to testify to the matters stated therein, and must state facts that would be admissible in evidence. Rule 56(e). While Plaintiff's declaration states that Clay, Pulice and Perez-Mesa told him that Dwyer knew about the partnership agreement and took action to get Plaintiff fired from Clay Chapman, Plaintiff must have personal knowledge and cannot rely on inadmissible hearsay. Id.

A court must determine admissibility pursuant to the Federal Rules of Evidence. Orr, 285 F.3d at 778. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Unless there is an applicable rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807.

28

See Fed. R. Evid. 802.  As declarant, Plaintiff has no personal knowledge about conversations between Dwyer and others where he was not a party to those conversations.  His statements about what Clay or others were told by Dwyer are hearsay and no exception to hearsay applies here.  Therefore, paragraphs 13-16, 25-27, 34, 37, 38-39, 44, 46, 49, 56-58, 60, 66-67, 80-81, 84-85, and 91 are not admissible as evidence in opposition to the Motion.  With regard to Shin's deposition testimony, it is not hearsay but Shin's testimony does not raise a genuine issue of material fact that Dwyer did not know about any partnership agreement between Plaintiff and Clay Chapman, and that Dwyer did not ask for Plaintiff's employment to be terminated unless he dropped his lawsuits.  [Mem. in Opp., Pltf.'s Decl., "Shin Deposition Joint Defense Excerpt"; Dwyer CSOF, Nakashima Decl., Exh. A (Clay Decl.) at ¶ 10.]

The Court finds that summary judgment is appropriate because there is no genuine issue of material fact that Dwyer did not know of any contract between Plaintiff and Clay Chapman, a necessary element of Plaintiff's claim, and thus Plaintiff cannot maintain his claim for tortious interference with a contractual relationship.

Next, Dwyer argues that Plaintiff has failed to plead that he induced anyone to breach the alleged employment contract.  He argues, even if he had approached Clay at a Rotary

Club event and asked if there was anything that could be done to make the state court litigation "go away," the causal link between his question and Plaintiff's eventual termination is missing. [Mem. in Supp. of Dwyer Motion at 9-10.] Because Clay declared that Dwyer never approached him or asked him to terminate Plaintiff, Dwyer argues Plaintiff has not alleged any action taken by Dwyer to interfere with the alleged employment contract. [Id. at 10; Clay Decl. at ¶10.] Again, Plaintiff's averments regarding Dwyer demanding Plaintiff's termination from employment refer to specific events and conversations based on hearsay and there is no hearsay exception that is applicable. Plaintiff is not competent to testify about these statements. Because the Plaintiff's averments are inadmissible hearsay, this Court can disregard them and find that there is no genuine issue of material fact that Dwyer did not demand Plaintiff's termination. Plaintiff therefore cannot maintain his claim for tortious interference with a contractual relationship.

## III. <u>Tortious Interference with Prospective Economic Advantage</u>

To sustain a claim for tortious interference with prospective economic advantage requires proof under Hawai`i law, a plaintiff must plead:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy that is reasonably probable of maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship,

30

> advantage, or expectancy by the defendant; (3)
> purposeful intent to interfere with the
> relationship, advantage or expectancy; (4) legal
> causation between the act of interference and the
> impairment of the relationship, advantage, or
> expectancy; and (5) actual damages.

Wadsworth v. KSL Grand Wailea Resort, Inc., 818 F. Supp. 2d

1240, 1252 (D. Hawai`i 2010) (citing Meridian Mortgage, 109

Hawai`i at 47-48, 122 P.3d at 1145-46.

        Dwyer argues Plaintiff cannot prove the first element

of his claim for tortious interference with prospective economic

advantage because Plaintiff had no reasonable expectancy of a

future benefit.  He, in essence, argues the alleged promise of

future partnership is not enforceable for lack of specificity.

[Mem. in Supp. of Dwyer Motion at 11.]  As an at-will employee,

Plaintiff has not established an expectancy that is

"sufficiently definite, specific and capable of acceptance in

the sense that there is a **reasonable probability** of it maturing

into a future economic benefit to plaintiff.".  [Id. (emphasis

in Mem. in Supp. of Dwyer Motion) (citing Miracle v. New Yorker

Magazine, 190 F. Supp. 2d 1192, 1203 (D. Haw. 2001)).]  Dwyer

argues that the Clay Declaration establishes that he did not

promise a future partnership, and even if he had, it would be

contingent on approval of the board of directors, and therefore

too remote to be probable.  [Id. at 12 (citing id., Clay Decl.

at ¶ 14).]  Therefore, Dwyer argues, Plaintiff's allegations

amount to a hope of continued employment and future partnership, not a guarantee or promise.  Such an unreasonable belief cannot be the basis of a tortious interference with prospective economic advantage.  [Id.]

Plaintiff asserts that his Third Amended Complaint successfully alleged the requisite elements of tortious interference with prospective economic advantage against Dwyer. Further, he argues that his Declaration establishes that there are genuine issues of material fact with respect to Dwyer.

As to the first element, that is: the existence of a valid business relationship or a prospective advantage or expectancy that is reasonably probable of maturing into a future economic benefit to the plaintiff, Hawai`i law provides

> **there must be a colorable economic relationship between the plaintiff and a third party** with the potential to develop into a full contractual relationship.  The prospective economic relationship need not take the form of an offer but **there must be specific facts proving the possibility of future association.**  Locricchio [v. Legal Svcs. Corp.],833 F.2d [1352,] 1357 [9th Cir. 1987)] (internal quotation marks and citation omitted) (emphases added).

Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Hawai`i 77, 116, 148 P.3d 1179, 1218 (2006) (emphases in Hawaii Med. Ass'n).  Plaintiff has raised a genuine issue of material fact as to the first element.  Namely, the fact that Plaintiff was employed as an associate lawyer with Clay Chapman at the time

that Clay admonished Plaintiff in an e-mail to be mindful of his "future partners". <u>See</u> Mem. in Opp., Pltf.'s Decl., Exh. 1 (E-mail dated 6/23/20 from Gerald S. Clay).  Clay's denials notwithstanding, all inferences made in Plaintiff's favor leads to the conclusion that there is a genuine issue of material fact whether there was an offer of the possibility of future partnership.

The second element of the claim is "knowledge of the relationship, advantage, or expectancy by the defendant". <u>Wadsworth</u>, 818 F. Supp. 2d at 1252.  Dwyer argues he had no knowledge of any partnership expectation, that Plaintiff failed to plausibly allege that he had any such knowledge, and thus Plaintiff is not able to establish that he intentionally interfered with a prospective business advantage.  [<u>Id.</u> at 13; <u>id.</u>, Dwyer Decl. at ¶ 7.]  In response, Plaintiff argues that Dwyer was aware of his prospective partnership contract and cites the following portions of his declaration in support:

> 13. Defendant Dwyer did know about my agreed upon equity partnership agreement with Clay Chapman when he began his tortious interference since Gerald Clay (my former boss, former defendant in this lawsuit and co-conspirator of Patrick Shin, Nan, Inc., John Dwyer, Richard Wilson and Terrance Revere) admitted to me face to face that he specifically told Defendant Dwyer of my partnership agreement with the firm during Mr. Clay and Defendant Dwyer's discussions about me, as explained below and detailed in my Third Amended Complaint.

33

14. Defendant Dwyer, in conspiracy with Patrick
Shin, Nan, Inc., Richard Wilson and Terrance
Revere, demanded several times from my
former boss Mr. Clay that I either be fired
or forced to drop my state lawsuit against
NAN and Defendant Shin and federal lawsuit
against Defendants Patrick Shin, Nan, Inc.,
John Dwyer, Richard Wilson and Terrance
Revere.

15. Gerald Clay (my former boss, former
defendant in this lawsuit and co-conspirator
of Patrick Shin, Nan, Inc., John Dwyer,
Richard Wilson and Terrance Revere) admitted
to me face to face that Defendant Dwyer made
these demands (that I either be fired or
forced to drop my state and federal
lawsuits) during their conversations about
me.

34. Due to the above, I was extremely
intimidated, deterred and threatened from
pursuing my State Lawsuit, and subsequent
federal lawsuit after EEOC finished their
inquiry.  Also, my employment and
partnership was interfered with since my
boss Gerald Clay was not happy with me.
Gerald Clay told me that Defendants Shin,
Dwyer and Wilson are people of influence and
power and that they can and will take my job
and partnership away unless I drop my legal
actions against the Defendants NAN and Shin.
After this conversation, I was intimidated
and felt deterred from pursuing my legal
actions against Defendants NAN and Shin
because of these threats.  Gerald Clay
stated to me that my future promised
partnership could be in danger if I don't
drop the state lawsuit against Defendants
NAN and Shin.

44. Gerald Clay further stated to me that he
told Defendant Dwyer that I had an agreed
upon equity partnership with the firm and
that Defendants Wilson, NAN, Shin and Dwyer

were therefore aware of my promised
partnership.

46. Few weeks later after Defendant Dwyer
approached Mr. Clay (former defendant in
this case and co-conspirator of Defendants
Shin, NAN, Dwyer, Revere and Wilson) and
demanded that I be fired unless I drop the
state lawsuit against his good friend
Defendant Shin and his company NAN,
Defendant Wilson (in conspiracy and on
instruction by Defendants Shin, Nan, Dwyer
and Carlos Perez-Mesa) called and talked to
my boss Gerald Clay and badmouthed me to my
boss by making false and out of context
allegations.  Defendant Wilson, on behalf of
Defendants Shin, Nan and Dwyer demanded from
Gerald Clay to either fire me or make me
drop my State lawsuit against the Defendant
Shin and NAN.  Defendant Wilson also
promised business opportunities and business
favors from and on behalf of Defendants
Shin, Nan, and Dwyer in exchange for his
demands that I be fired or forced to drop my
State lawsuit.

47. Mr. Clay admitted to me everything stated
above in paragraph 46 when he relayed these
threats to me made by Defendant Wilson
during their conversation.  Once again,
Mr. Clay directly implicated Defendant Dwyer
and admitted Defendant Dwyer is involved in
this conspiracy.  Mr. Clay again stated that
Defendant Dwyer is his dear friend and that
I need to take these threats seriously and
seriously consider dropping my state
lawsuit.

49. Mr. Clay specifically told me that
Defendants NAN, Shin, Dwyer and Wilson all
know that I have been promised a partnership
and that I had a partnership agreement with
Clay Chapman firm (Mr. Clay admitted to me
that he told them) and that the Defendants
NAN, Shin, Dwyer and Wilson will take away
my partnership unless I drop my State
lawsuit

56.   Both Mr. Clay and Mr. Perez-Mesa stated to
      me that because of Defendants Wilson, **Dwyer**,
      Shin, NAN and Revere's communications to
      Mr. Perez-Mesa and Mr. Clay respectively, my
      partnership and employment will be taken
      away unless I drop the State of Hawaii
      Complaint against Defendants NAN and Shin,
      and abandon my intention to file my federal
      lawsuit.  Mr. Perez-Mesa further stated to
      me that both Defendant Wilson and Revere
      talked to him on behalf of themselves and on
      behalf of Defendants Shin, **Dwyer** and NAN.

57.   Mr. Perez-Mesa further admitted to me that
      Defendants Wilson and Revere specifically
      stated to Mr. Perez-Mesa that Defendants
      Wilson, Revere, NAN, **Dywer** and Shin, in
      their conspiracy amongst each other, want my
      "head on a spike" and that they want me
      fired unless I drop my legal actions against
      the Defendants.  Mr. Perez-Mesa and Mr. Clay
      specifically instructed me that unless I
      drop my State of Hawaii lawsuit against
      Defendants Shin and NAN, and abandon my
      intention to file federal lawsuit against
      the Defendants Wilson, Dwyer and Shin, that
      I will be fired due to Defendants Wilson,
      Revere, NAN, **Dwyer** and Shin's demands **that I
      be fired in exchange for these Defendants
      offering the firm business and income
      opportunities.**

58.   Mr. Clay also repeated these threats to me
      and specifically told me and stated that
      Defendants **Dwyer**, Wilson, Revere, NAN and
      Shin demanded that I be fired unless I drop
      my legal actions against them.

61.   I was also defamed by Defendants Wilson and
      Revere in conspiracy with other Defendants
      Shin, Dwyer and NAN in the eyes of my
      partners at my firm by Defendants Wilson,
      Revere, Dwyer, Shin and NAN conspiring to
      make false and out of context allegations
      about my character and behavior.

66.   Later that day, Mr. Clay told me that as a result of Defendants Shin, NAN, Wilson, **Dwyer** and Revere's influence, calls, emails and face to face talks, my promised and agreed upon partnership will be taken away and that I will probably be fired unless I drop my state and federal lawsuits against Defendants NAN, Shin, Dwyer, Revere and Wilson.

67.   Mr. Clay specifically instructed me and told me that Defendants Shin, NAN, **Dwyer**, Wilson and Revere all either emailed and/or called and/or approached face to face Mr. Clay and various other Clay Chapman partners and demanded that I be fired unless I drop my federal and state actions against Defendants Wilson, Revere, Dwyer, NAN and Shin. **Mr. Clay once again specifically implicated Defendant Dwyer admitting to me that Defendant Dwyer demanded I be fired unless I drop the lawsuits.**

77.   Mr. Clay admitted to me that NAN, Shin, Revere, Wilson and **Dwyer** all know that I have been promised a partnership in Clay Chapman firm and that I have a partnership agreement (Mr. Clay admitted to me that he told them, especially told Defendant Dwyer) and that the Defendants NAN, Shin, Revere, Wilson and Dwyer will take away my partnership unless I drop my State and federal lawsuits against them.

91.   Defendants Shin, Wilson, Revere, NAN and Dwyer, who knew about this agreed upon partnership and contract, without legal justification and through illicit actions, including but not limited to defamation, threats and repeated acts of obstruction of justice, intentionally induced my employer – Clay Chapman firm to take away my promised and agreed upon partnership, terminate my employment and take away my contract and my prospective economic and business advantage.

Plaintiff CSOF at PageID#: 3828 (citing Pltf.'s Decl. at ¶¶ 3-15, 34, 44, 46-47, 56-58, 61, 66-67, 77 and 91) (emphases in Pltf.'s Decl.)).

In short, Plaintiff relies on inadmissible hearsay to oppose Clay's testimony that "[n]o one outside of Clay Chapman ever requested or demanded that [Plaintiff] be terminated," [Dwyer CSOF, Nakashima Decl., Exh. A (Clay Decl.) at ¶ 12,] Perez-Mesa's testimony that he did not "promise or guarantee [Plaintiff] a partnership in Clay Chapman," [id., Exh. B (Perez-Mesa Decl.) at ¶1 7,] and Dwyer's testimony that he was "unaware of and had no knowledge:  (a) that [Plaintiff] was an attorney; (b) he was an employee of the Clay Chapman firm; (c) that he had a contract with the Clay Chapman firm; or (d) that he had allegedly been offered a partnership in the Clay Chapman firm," [id., Dwyer Decl. at ¶ 7].  A court can only rely on admissible evidence in deciding a motion for summary judgment.  Orr, 285 F.3d at 783.  Because Plaintiff offers testimony not based on his personal knowledge but on out-of-court statements by others for which there is no hearsay exception, the Court can disregard these potions of his declaration.  The Court concludes that no genuine issue of material fact exists that Dwyer did not have knowledge of Plaintiff's relationship, advantage, or expectancy. Because this is an essential element of Plaintiff's claim for

tortious interference with prospective economic advantage,
summary judgment must be granted.

## IV. **Nan Joinder**

Shin and Nan argue that the Dwyer Motion establishes that
there was no conspiracy to have Plaintiff terminated from Clay
Chapman if he did not drop his state court litigation. [Nan
Joinder at 2.] With respect to summary judgment, the Nan
Defendants argue:

> If this court treats the Motion as one for
> summary judgment, to oppose it Plaintiff must now
> produce admissible evidence to Motion. Fed. R.
> Civ. P. 56(c)(2), (4). And, in order to
> establish both the claim of tortious interference
> with contractual relations and the claim of
> tortious interference with prospective economic
> and business advantage, Plaintiff must show that
> he can satisfy all of the elements of his claims
> for tortious interference with contractual
> relations and with prospective economic
> advantage. The Motion and attached declarations
> establish that Plaintiff cannot establish any of
> those elements.

[Id.] For these reasons, the Nan Defendants join in Dwyer's
Motion. Plaintiff did not file a separate opposition to the Nan
Joinder. However, the Nan Joinder argues only that the Dwyer
should be granted, and does not establish that Nan and Shin are
entitled to any relief themselves. Therefore, the Nan Joinder
is granted, to the extent the Dwyer Motion is granted with
respect to Dwyer only.

## CONCLUSION

For the Foregoing reasons, Dwyer's Motion to Dismiss or Alternatively, for Summary Judgment, filed May 7, 2021, construed as a motion for summary judgment, is GRANTED. Summary Judgment is thus GRANTED in favor of Dwyer as to all claims in the Third Amended Complaint. Nan and Shin's Substantive Joinder in Defendant John Dwyer's Motion to Dismiss or Alternatively, for Summary Judgment, Filed May 7, 2021 [ECF No. 213], filed May 10, 2021, is GRANTED to the extent the Dwyer Motion is granted with respect to Dwyer only. The Clerk's Office is DIRECTED to enter judgment in favor of Dwyer on **August 6, 2021.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 23, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BOSKO PETRICEVIC VS. PATRICK SHIN, ET AL; CV 20-00283 LEK-WRP; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**